UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2003 DEC 29 A 11:09

U.S. DISTRICT COURT
DISTRICT OF MASS.

GRAFTON AND UPTON RAILROAD
COMPANY,
        Plaintiff,

v.

TOWN OF MILFORD,
        Defendant.

C.A. No.:

03-40291

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT

### Parties

1. Plaintiff, Grafton and Upton Railroad Company ("GU"), is a Massachusetts railroad corporation, whose principal place of business is located at 40 Pullman Street, Worcester, Worcester County, MA.

2. Defendant, Town of Milford, ("Milford") is a town incorporated under the laws of the Commonwealth of Massachusetts and is located in Worcester County, MA.

### Jurisdiction

3. This action arises under 49 U.S.C. § 10501, which rests in the Surface Transportation Board, created by 49 U.S.C. § 701, exclusive jurisdiction over transportation by railcarriers.

4. This action also arises under 28 U.S.C. § 2201(a), which permits:

> In a case of actual controversy within its jurisdiction...any court of the United States...may declare the rights and other legal relations of any party seeking such declaration, whether or not further relief is or could be sought.

RECEIPT # 404343
AMOUNT $150.
SUMMONS ISSUED ✓
LOCAL RULE 4.1 ✓
WAIVER FORM ✓
MCF ISSUED ✓
BY DPTY CLK _____
DATE 12-29-03

5. Injunctive relief is sought pursuant to Fed. R. Civ. P. 65. *See* Rule 65, Title 28, Appendix, *Judiciary and Judicial Procedure*.

## Factual Background

6. The plaintiff repeats and re-alleges paragraphs 1 through 5, as if expressly set forth herein.

7. The GU is a privately owned railroad which was incorporated as the Grafton Center Railroad in 1873 and changed its name to its current moniker in 1887.

8. The GU operates over 15.5 miles of main line track that runs from North Grafton to Milford and also has railroad yards in Hopedale, Grafton, Upton and Milford as well as a number of sidetracks throughout its territory.

9. From 1894 to 1928, the GU was a significant passenger carrier.

10. In the early 1900's the GU's freight business increased dramatically.

11. By the 1930's, the GU had become a major regional freight carrier moving primarily cattle and motor vehicles.

12. From its "heyday" in the 1930's and 40's, the volume of the GU's business has until recently steadily declined.

13. Although it has never completely stopped doing business, the GU has until recently been relatively dormant.

14. A number of its tracks have become underutilized, a number of its grade crossings have been paved over, there are a number of encroachers on its property and the customers it services are few in number.

15. However, the GU has recently begun efforts to reestablish itself as a viable and profitable railroad, and has undertaken measures to improve its infrastructure, re-utilize its yards and increase the volume of freight it moves over its tracks.

16. Unfortunately, the GU is not well-capitalized. The future economic health (and very existence) of the GU depends on generating cash flow through projects which can be carried out on the portions of its infrastructure which can currently support income-generating railroad operations.

17. The GU intends to reinvest income so generated to improve its lines and develop more business.

18. The prime location for conducting income-generating railroad operations is the GU's Milford Yard (the "Yard").

19. The GU currently interchanges[1] railcars with CSX Transportation, Inc. ("CSX")[2] at North Grafton.

20. On the Milford side, the GU's tracks terminate at an intersection with a busy CSX freight line known as the "Milford Secondary Branch."

21. The Milford Yard is located immediately west of the point of intersection between the GU's main line and CSX's Milford Secondary Branch.

22. The GU's main line runs directly through the Milford Yard – the Yard is physically located on both sides of the main line track.

---

[1] "Interchange" is a railroad term which means the delivery, in interstate commerce, of railroad equipment from one railroad to another, and the acceptance thereof, for further carriage by rail.

[2] CSX is a Class I freight railroad with headquarters in Jacksonville, FL and which operates over tracks it owns in several states throughout the northeastern, midwestern, mid-atlantic and southeastern United States. CSX is the primary carrier of freight between Massachusetts and the rest of the country.

23. The GU has desired to increase its business by developing the Milford Yard and increasing its ability to interchange with CSX.

24. The Yard is a unique and ideal location since it connects almost directly to CSX's line.

25. In order to enable the interchange of cars with CSX at the Yard, the GU (within the last four months) has had an old switch reinstalled at the point where the GU's tracks connect to CSX's Milford Secondary Branch.

26. The GU has been attempting to develop new business with the assistance of railroad consultants, including Robert Krafty, the former Manager of Real Estate for the Consolidated Rail Corporation (CSX's predecessor in the northeast).

27. Earlier this year, Mr. Krafty contacted Allen Marsh, the principal of a company called Boston Railway Terminal Corporation ("BRT"), with a proposal to move BRT's operations to the Milford Yard.

28. BRT is a terminal railroad company[3] and its principal business is the distribution of steel.

29. BRT currently operates out of a facility located in South Boston which is owned by CSX.

30. BRT accepts shipments of steel via railcar at its facility, where the railcars are moved about, the steel is off-loaded and placed onto trucks and then shipped to BRT's customers throughout the region.

31. BRT owns and operates its own locomotive and conducts its own railroad switching operations at and within its South Boston facility.

---

[3] A "terminal railroad" runs over a short, fixed distance and operates for a singular purpose, such as the movement of freight within an industrial complex, or for a single industrial entity.

32. CSX has advised BRT it must vacate the South Boston facility as soon as possible.

33. The Milford Yard is uniquely located and configured to accommodate BRT's operations – it is connected almost directly to CSX, it is geographically located in the center of BRT's sphere of operations and it has roadway access via Route 140 to Route 495 (a desired route for the trucks which will haul steel to BRT's customers); and the BRT also provides a unique opportunity for the GU.

34. The Yard is obviously a significant GU asset, but the GU currently can use it only for activities such as those conducted by BRT.

35. There are few, if any, operating terminal railroads (or any other businesses) in Massachusetts which are currently looking to relocate their operations and which would be able to assist in the improvement, development and use of an entire railroad yard.

36. The BRT represents the only current option available for the GU to increase its financial standing through the use of the Yard.

37. During this past spring, the GU and BRT reached an agreement that the BRT would move its operations to the GU's Milford Yard.[4]

38. As part of this agreement, the GU was required to reinstall the switch connecting its line to CSX's Milford Secondary Branch, a task the GU has already accomplished.

39. BRT will be required to make physical improvements to the Yard and its tracks. Once this is accomplished, CSX will start delivering shipments of steel via railcars to the GU's account at the Yard, where they will be interchanged to the GU.[5]

---

[4] The original agreement called for BRT to lease the Yard from GU. However, the terms of the agreement have consistently evolved and changed over the last few months.

40. GU will generate revenue from the interchange of these cars, all of which will have been shipped from other states.[6]

41. The GU will also be required by its agreement with BRT to perform various operational activities regarding the interchange and movement of the railcars once they have been delivered by CSX.

42. For instance, GU employees will operate a locomotive leased from the BRT and will physically move the railcars from the point of interchange with CSX to locations within the Yard, using both the GU's main line track as well as another track which is also located within the confines of the Yard.

43. BRT employees will then off-load the steel and haul it to customers throughout New England.

44. The GU will then physically move the railcars back to the point of interchange and return them to CSX.

45. The GU will retain the right to continue to use its main line for other traffic in addition to the BRT's shipments of steel.

46. The proposed GU/BRT agreement is subject to the execution of an acceptable written contract and BRT's being able to commence railroad operations at the Yard.

47. The GU and BRT began, earlier this year, to negotiate and draft a contract which is intended to memorialize the terms and conditions of the BRT's use of the Yard as

---

[5] The GU will be expected to enter into a separate *Interchange Agreement* with CSX in order to begin accepting cars at the Yard. BRT will not be a party to the *Interchange Agreement*.

[6] Steel shippers will pay the GU $250.00 for its services (the shipment of each railcar and the movement of the railcars at and within the Yard). The terms of the proposed GU-BRT agreement also require BRT to pay the GU $5,000.00 per month for the use of the Yard and the services provided by the GU, against which will be offset a $100.00 credit for each railcar brought into the Yard (not to exceed $5,000.00 per month).

well as the charge for the use of the Yard and the charges the GU will be paid for delivering railcars to BRT.

48. The GU and BRT have been ready, willing and able to commence railroad operations, subject to the execution of the written contract, since late spring/early summer [at least as of six (6) months ago].

49. They have not done so due to the Town's position that the proposed railroad operations cannot legally occur at the Yard.

50. In the early spring, the GU's representatives (including Mr. Krafty and the GU's General Manager, Bridget Lucey) approached the Town to advise it of the GU's proposed use of the Yard.

51. During late spring and early summer, Ms. Lucey and Mr. Krafty met with Town officials, both at the Yard and at Town Hall, to discuss the proposed railroad operations.

52. During those meetings, the GU was repeatedly advised by various Town officials that the Yard was, according to the Town's *Zoning By-Laws*, located in a district classified as "General Residential," the proposed use of the Yard was not allowed in a General Residential district and, therefore, the Town objected to and prohibited the GU and BRT from conducting the proposed railroad operations at the Yard.

53. After informally attempting to resolve this dispute, the GU retained counsel to present its position to the Town.

54. On September 8, 2003, the GU sent to the Town correspondence advising it that its *Zoning By-Laws* are preempted by federal law, and therefore are inapplicable to the GU, the BRT and the railroad operations planned for the Yard. *See* letter from

Attorney Davidson to Town Counsel Gerald Moody, a copy of which is attached to the hereto as Exhibit "A."

55. On October 10, 2003, Town Counsel sent to the GU correspondence in which the Town refuted the substance of the GU's September 8, 2003 letter and asserted that its *Zoning By-laws* were not preempted. *See* letter from Attorney Moody to Attorney Davidson, a copy of which is attached hereto as Exhibit "B."

56. On November 12, 2003, the GU's counsel responded by sending another letter further clarifying its position and refuting the analysis offered by Town Counsel in his October 10, 2003 correspondence. *See* letter from Attorney Flynn to Attorney Moody, a copy of which is attached hereto as Exhibit "C."

57. On November 14, 2003, Ms. Lucey, Mr. Krafty and the GU's counsel met with Town Counsel at Milford's Town Hall in an effort to resolve this dispute.

58. At this meeting, Town Counsel indicated that the Town did not agree with the GU's position concerning the preemptive effect of the applicable federal law, but requested additional information concerning the BRT's assets and present operations, and he also requested an opportunity to speak with the Board of Selectmen concerning the issue.

59. The GU's representatives asked the Town to change reconsider its position and get back to them as soon as possible.

60. On November 25, 2003, the GU provided the information requested by Town Counsel. *See* letter from Attorney Davidson to Attorney Moody, a copy of which is attached hereto as Exhibit "D."

61. Town Counsel never got back to the GU. Instead, GU's counsel telephoned Town Counsel on December 4, 2003 and was then informed, for the first time, that the Town intended to file a petition with the Surface Transportation Board ("STB") concerning the proposed use of the Yard.

62. On December 8, 2003, the Town filed its *Petition* with the STB, seeking a declaratory order that the proposed use of the Yard was prohibited by the Town's *Zoning By-laws*, and was also subject to the *Massachusetts Wetlands Protection Act*, M.G.L. ch. 139 § 40. A copy of the *Petition* is attached hereto as Exhibit "E."

63. The Town has already delayed [for at least six (6) months] and otherwise prevented the GU/BRT's ability to conduct railroad operations at the Yard.[7]

64. The Town's STB *Petition*, if allowed to run its course through the STB's proceedings, will further delay, frustrate and prevent the GU from conducting railroad operations at the Yard.

65. The Town's current position, and its *Petition*, will also likely permanently and irrevocably damage the GU's ability to conduct its business, at the Yard or otherwise,

---

[7] The GU and BRT have been ready, willing and able to commence their use of the Yard since at least July 2003, and would have began these operations but for the Town's position. Thus, the GU has suffered, and is at this moment continuing to suffer, monetary damages and ongoing lost business opportunities. Six months of payments under the proposed terms of the GU/BRT agreement would have amounted to $30,000.00. *See supra* at n. 6. In addition, at its current location, BRT has averaged the receipt of eleven (11) railcars per month for the last twelve (12) calendar months. Given this same volume of traffic, BRT would have brought sixty-six (66) railcars into the Yard over the last six (6) months. Applying the credits for these railcars as per the proposed agreement, the total monthly payments would have been reduced to $23,400.00. The GU has also lost, and is continuing to lose, the $250.00 fee it is expected to collect from the shipper of each of these railcars. Given the loss of sixty-six (66) shipments over the last six (6) months, the GU has suffered additional lost revenues in the amount of $16,500.00. Thus, the total lost revenue to date amounts to $41,000.00. So long as the Town continues to obstruct the GU's ability to use its Yard, the GU will continue to lose $7,650.00 per month. Finally, the GU has incurred, and continues to incur, attorneys' fees and other costs associated with this dispute.

49 U.S.C. §10501(b).

70. Both the Town's *Zoning By-laws* and the *Wetlands Protection Act* are preempted by the clearly expressed terms of 49 U.S.C. §10501(b) and by operation of federal law.

WHEREFORE, the plaintiff, Grafton and Upton Railroad Company, requests that this Honorable Court:

1. declare that Town of Milford's *Zoning By-laws* and the *Wetlands Protection Act* are preempted;

2. declare that the Town is prohibited and enjoined from asserting, applying or enforcing, or attempting to assert, apply or enforce, its *Zoning By-Laws* against the GU and/or the BRT concerning railroad operations at the Milford Yard;

3. order the Town to withdraw and/or otherwise dismiss its STB *Petition* or order the STB to dismiss the Town's *Petition*;

4. grant the GU its costs, interest and attorneys' fees, and

5. order other equitable relief the court deems appropriate and just.

Respectfully submitted,
GRAFTON AND UPTON RAILROAD CO.,
by its attorneys,

Michael B. Flynn          BBO No.: 559023
Richard A. Davidson, Jr.  BBO No.: 552988
FLYNN & ASSOCIATES, P.C.
189 State Street
Sixth Floor
Boston, MA 02109
(617) 722-8253

Dated: 12/29/03

11

since the BRT will most likely relocate its operations to another location, thereby depriving the GU of this unique business opportunity.[8]

66. The BRT agreement, and the income it is expected to generate, is integral to the GU's economic survival and its ability to finance further development.

## Count I
### Request for Declaratory Relief

67. The plaintiff repeats and re-alleges paragraphs 1 through 66, as if expressly set forth herein.

68. The railroad operations that the GU and BRT propose to conduct at the Milford Yard are subject to the exclusive jurisdiction of the Surface Transportation Board (the "STB"), under the authority granted by the *Interstate Commerce Commission Termination Act* (the "Act").

69. The Act contains an expressed preemption clause which states as follows:

    (b)    the jurisdiction of the (STB) over –

        (1)    transportation by railcarriers, and the remedies provided in this part with respect to rates, classifications, rules… practices, routes, services and facilities of such carriers; and

        (2)    the construction, acquisition, operation, abandonment or discontinuance of spur, industrial, team, switching, or sidetracks, or facilities, even if the tracks are located, or intended to be located entirely in one state, is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

---

[8] The proposed agreement with BRT is extremely unique due to the fact that there are no other terminal railroads in the region that are in need of a rail yard and the services that the GU can provide at the Yard. If the GU does not resolve this dispute as soon as possible, and move the BRT into its Yard, then it will lose the BRT as a tenant and lose the income which results from having the BRT at the Yard. During the late summer and into the fall the BRT advised the GU that, unless the GU could resolve its dispute with the Town, it would need to find another location to relocate its operations. It is the GU's understanding and belief that the BRT has been actively looking for another suitable location for its operations due to the GU's inability to resolve its dispute with the Town.

## VERIFICATION

I, Bridget Lucey, General Manager of the Grafton and Upton Railroad Company, certify under the pains and penalties of perjury that the within *Complaint for Declaratory Judgment* is true.

Dated: 12/26/2003

Bridget Lucey
General Manager
Grafton and Upton Railroad Company

G:\F & A\CASE FILES\Grafton & Upton RR\milford secondary-allen marsh\Complaint for Declaratory Relief.doc

(Rev. 11/95)

# CIVIL COVER SHEET

03-40291

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

FILED
IN CLERKS OFFICE

**I. (a) PLAINTIFFS**

Grafton and Upton Railroad Company
40 Pullman Street
Worcester, MA

**DEFENDANTS**

Town of Milford
52 Main Street    2003 DEC 29  A 11: 09
Milford, MA

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Worcester
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Worcester
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Michael B. Flynn     BBO# 559023
Richard A. Davidson, Jr.   BBO# 552988
189 State Street, 6th Fl., Boston, MA 02109
617-722-8253

**ATTORNEYS (IF KNOWN)**

Gerald M. Moody    BBO# 352380
52 Main Street, Milford, MA  01757
508-634-2302

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 640 R.R. & Truck | PROPERTY RIGHTS | ☐ 460 Deportation |
| ☐ 151 Medicare Act | PERSONAL INJURY | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 362 Personal Injury – Med. Malpractice | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 365 Personal Injury – Product Liability | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 368 Asbestos Personal Injury Product Liability | LABOR | SOCIAL SECURITY | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 330 Federal Employers' Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 340 Marine | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| | ☐ 345 Marine Product Liability | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | ☐ 350 Motor Vehicle | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| | ☐ 355 Motor Vehicle Product Liability | PERSONAL PROPERTY | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| | ☐ 360 Other Personal Injury | ☐ 370 Other Fraud | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| REAL PROPERTY | CIVIL RIGHTS | ☐ 371 Truth in Lending | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 380 Other Personal Property Damage | FEDERAL TAX SUITS | ☐ 950 Constitutionality of State Statutes |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☒ 890 Other Statutory Actions |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | PRISONER PETITIONS | ☐ 790 Other Labor Litigation | |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 510 Motions to Vacate Sentence | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | Habeas Corpus: | ☐ 871 IRS – Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | |
| | | ☐ 535 Death Penalty | | |
| | | ☐ 540 Mandamus & Other | | |
| | | ☐ 550 Civil Rights | | |

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

This is an action brought pursuant to 28 U.S.C. 2201(a) and Fed. R. Civ. P. 65, seeking a declaration from the court as to the preemptive effect of 49 U.S.C. 10501 against the the defendant.

**VII. REQUESTED IN COMPLAINT:**  CHECK IF THIS IS A CLASS ACTION  ☐ UNDER F.R.C.P. 23   DEMAND $ N/A   CHECK YES only if demanded in complaint: JURY DEMAND: ☐ YES  ☒ NO

**VIII. RELATED CASE(S) IF ANY** (See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE: December 29, 2003

SIGNATURE OF ATTORNEY OF RECORD: [signature]

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. **TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)** Grafton and Upton Railroad Company v. Town of Milford

2. **CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).**

    ___ I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

    _X_ II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.
    *Also complete AO 120 or AO 121 for patent, trademark or copyright cases

    ___ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.

    ___ IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.

    ___ V.   150, 152, 153.

3. **TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(E)).**
   N/A

4. **HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?** YES ☐ NO ☒

5. **DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST? (SEE 28 USC 2403)** YES ☐ NO ☒
   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY? YES ☐ NO ☒

6. **IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC 2284?** YES ☐ NO ☒

7. **DO ALL PARTIES IN THIS ACTION RESIDE IN THE CENTRAL SECTION OF THE DISTRICT OF MASSACHUSETTS (WORCESTER COUNTY) - (SEE LOCAL RULE 40.1(C)).** YES ☒ NO ☐
   OR IN THE WESTERN SECTION (BERKSHIRE, FRANKLIN, HAMPDEN OR HAMPSHIRE COUNTIES)? - (SEE LOCAL RULE 40.1(D)). YES ☐ NO ☐

8. **DO ALL OF THE PARTIES RESIDING IN MASSACHUSETTS RESIDE IN THE CENTRAL AND/OR WESTERN SECTIONS OF THE DISTRICT?** YES ☒ NO ☐
   (a) IF YES, IN WHICH SECTION DOES THE PLAINTIFF RESIDE? Central Section

9. **IN WHICH SECTION DO THE ONLY PARTIES RESIDING IN MASSACHUSETTS RESIDE?** ___

10. **IF ANY OF THE PARTIES ARE THE UNITED STATES, COMMONWEALTH OF MASSACHUSETTS, OR ANY GOVERNMENTAL AGENCY OF THE U.S.A. OR THE COMMONWEALTH, DO ALL OTHER PARTIES RESIDE IN THE CENTRAL SECTION:** YES ☐ NO ☐   **OR WESTERN SECTION;** YES ☐ NO ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME  Michael B. Flynn and Richard A. Davidson, Jr.
ADDRESS  189 State Street, Sixth Floor, Boston, MA 02109
TELEPHONE NO.  617-722-8253

(Categfrm.rev - 3/97)