# Exhibit "E"

# BEFORE THE
# SURFACE TRANSPORTATION BOARD

---

## FINANCE DOCKET NO. 34444

---

# PETITION OF
# THE TOWN OF MILFORD, MASSACHUSETTS
# FOR DECLARATORY ORDER

---

Gerald M. Moody
Town Counsel
Town Hall – 52 Main Street
Milford, MA  01757
(508) 634-2302

Attorney For Town of Milford

Dated:  December 8, 2003

3

# BEFORE THE
## SURFACE TRANSPORTATION BOARD

### FINANCE DOCKET NO. 34444

## PETITION OF
## THE TOWN OF MILFORD, MASSACHUSETTS
## FOR DECLARATORY ORDER

This Petition is filed by the Town of Milford, Massachusetts, a Massachusetts municipal corporation. (hereafter "Milford"). Milford hereby requests that this board institute a Declaratory Order proceeding pursuant to 5 USC Sec. 554(e), 49 USC Sec.721 and 49 CFR Part 1117 and any other applicable authority. Milford requests that such Declaratory Order determine that certain activity proposed to be undertaken by the Boston Railway Terminal Company upon land owned by the Grafton and Upton Railroad Company is not exempt from application of the provisions of the zoning by-laws of Milford nor the Wetlands Protection Act of the Commonwealth of Massachusetts (M.G.L. c. 131, Sec. 40) pursuant to 49 USC Sec. 10501(b)(2) or any other applicable provisions of federal law.

4

STATEMENT OF FACTS

A.    Identity and Addresses of Parties.

The Town of Milford is a Massachusetts municipal corporation situated in Worcester County. The address of the town is Town Hall, 52 Main Street, Milford, Massachusetts 01757.

The Grafton & Upton Railroad Company is an entity which evolved from the Grafton Center Railroad Company incorporated in 1873. The Grafton & Upton Railroad Company uses a corporate address of Depot Street, Hopedale, Massachusetts 01747.

The Boston Railway Terminal Corporation is a Massachusetts for profit corporation, with an address of 11-21 Fargo Street, Boston, Massachusetts 02210 and with a transportation terminal facility at 160 West First Street, South Boston, Massachusetts.

B.    Factual Background.

The Grafton & Upton Railroad Company (hereafter "GU") is a small, Massachusetts railroad company with right of way in the towns of Grafton, Upton, Hopedale and Milford, Massachusetts. Although GU has never applied for or received a certificate of public convenience and necessity to abandon any of its track rights, the activities of GU have been limited over the last few decades. That portion of the GU right-of-way which does extend into Milford has not been used for well over twenty (20) years and has been allowed to deteriorate to the point where the track, to the extent it is still extant, is not usable. Indeed, in the two areas where the old line crossed public ways in Milford, at South Main Street and at Depot Street, the track was long ago removed.

5

The terminus of the short stretch of GU right-of-way in Milford does abut the still active line of CSX Railroad at the Milford Secondary Branch. A copy of portions of the Milford Assessors Maps is attached hereto as Exhibit "A". The area which is crosshatched thereon is the property of GU where their old line terminates at the CSX right-of-way.

In or about September of 2003 the town was informed of a plan whereby GU intended to permit a company known as Boston Railway Terminal Corporation (hereafter "BRT") to establish a facility on the GU property in Milford at which facility they would receive shipments of steel. These shipments would come in by the CSX line, be unloaded onto the GU property, be stored and prepared for shipment to BRT customers by BRT trucks. Trucks would enter and exit the site over the GU right-of-way across Vernon Street and onto Depot Street. All of the foregoing is outlined in more detail in a letter from Robert Krafty, submitted on behalf of GU dated September 16, 2003 (attached hereto as Exhibit "B") and a letter from counsel for GU dated November 25, 2003 (attached hereto as Exhibit "C"). The Krafty letter refers to activity to be undertaken by a "Mr. Marsh". One Alan Marsh is the sole officer and principal of BRT.

As is indicated in the Krafty letter, rail cars would come in on the CSX tracks and switch back onto the GU property. As is stated in that letter:

> Mr. Marsh will receive rail cars of steel. They will be transported via truck to various locations in New England.

> Mr. Marsh will load and unload trucks in the yard. The truck ingress and egress will be over the Railroad right of way.
>
> (See Exhibit "B")

Similarly, the letter from counsel for GU details the current operations of BRT at a site it currently utilizes in South Boston, together with more detail as to its proposed activity in Milford. BRT is apparently losing access to its site at West First Street in South Boston, presumably because of construction of a nearby new

4

6

convention center. Counsel for GU summarized the proposed activities of BRT as follows:

> BRT's business consists of receiving shipments of steel by rail and truck and shipping same to customers by truck. It also performs some fabrication work, involving cutting and welding…. The BRT receives rail cars from CSX Transportation.
>
> The BRT desires to relocate its operations to the GU's Milford Yard and would perform substantially the same operations at this location. It will set up both office-trailers in the yard at a location convenient for operations near available utility connections. Eventually, it desires to erect a steel building approximately 60' x 200' that will straddle at least one of the yard tracks so that operations could performed indoors. It will access Depot Street by paving the existing railroad right-of-way from Charles River Street to Vernon Street and plan to direct most truck traffic to Depot Street onto Main Street and then onto Route 140.

It is very significant to note that BRT is not a railroad. The records of this Board do not indicate that BRT has ever received, or even applied for, authorization to operate as a rail common carrier.

C.  Local and State Regulatory Provisions Applicable to the GU Site.

The entire area owned by GU behind Depot Street, and proposed to be utilized by BRT, is zoned Residential A (RA). In the RA Zoning District single and two-family residential use is allowed. The use proposed by BRT would be classified as a "Transportation Terminal", under the Milford Zoning By-Law and is not permitted in the RA Zoning District. It is important to note that this property has been zoned Residential in Milford since the inception of the first zoning by-law in 1945 and has been specifically designated as RA since 1965.

On Exhibit "A" all of the smaller lots shown surrounding Depot Street and the adjoining streets contain single and two-family residential structures. Additionally, the circle shown as Pheasant Circle is a multi-family apartment complex with 138 apartment units in multiple buildings that directly abut the GU property.

The GU site is surrounded and interspersed with significant wetlands and is abutted and partly crossed by a body of water known as The Godfrey Brook. The Milford Water Company which supplies water for the Town of Milford and surrounding towns, has a well site on the Godfrey Brook just south of the GU site. Any harmful substances emanating from the GU property into Godfrey Brook would flow directly to that water supply.

In 1992 the town, in an effort to provide a greater degree of protection for its water supply enacted a new Article VII of the Zoning By-Law creating a Water Resource Protection District as an overlay district. As is stated in Section 7.1 of that article, among the purposes of the enactment was to "protect, preserve and maintain the existing and potential groundwater supply and groundwater recharge areas within the town" and also "to preserve and protect present and potential sources of water supply for the public health and safety." The particular area here at issue is within the Water Resources Protection District 1 and the proposed activity of BRT would not be allowed in that district.

As was stated above the GU site is surrounded by and interspersed with significant areas of wetland and is even abutted by a perennially flowing body of water known as the Godfrey Brook. The Godfrey Brook is a "river" for purposes of what is referred to as the "Rivers Act". The Rivers Act is a euphemism for the 1996 Amendments to the Massachusetts Wetlands Protection Act.

In or about 1967 the Legislature of the Commonwealth of Massachusetts first enacted a comprehensive statute intended to protect vital wetlands in this Commonwealth. The statute is M.G.L. c. 131, Section 40, frequently referred to as the "Wetlands Protection Act". This statue, by its terms, requires that local Conservation Commissions, and the State Department of Environmental Protection (hereafter "DEP") act vigorously to protect certain defined "interests". Conservation Commissions and/or DEP action is required when a particular

project is in an area deemed to be significant to, among other, the following interests.

  a) public or private water supply;
  b) flood control;
  c) storm damage prevention;
  d) prevention of pollution;
  e) protection of wildlife habitat.

Very briefly, before any project can go forward calling for construction or activity within 100 feet of a wetlands, there must be the filing of a Notice of Intent with the local Conservation Commission and the issuance of an Order of Conditions from such commission after hearing. Such a local commission may condition or restrict activity that is proposed. Appeals from such Orders of Condition are taken to the DEP.

The BRT site is significantly impacted by wetlands protected by M.G.L. c. 131, Section 40 and, setting aside zoning issues, the BRT proposal could not go forward without submission to and review by the Milford Conservation Commission, and DEP, if appropriate.

In 1996, as referenced above, the Legislature of the Commonwealth of Massachusetts significantly amended the Wetlands Protection Act through the amendment commonly referred to as the "Rivers Act". Pursuant to this amendment the Godfrey Brook, which crosses the edge of the GU property, is considered to be a river. Pursuant to the Wetlands Protection Act as amended by the Rivers Act, there is an even higher degree of protection for a "Riverfront area". A "Riverfront area" is an area between a rivers' mean high water line and a parallel line 200 feet away. This Riverfront area impacts much of the GU site, in particular the proposed driveway over the old rail right-of-way towards Depot Street.

The above discussion of watershed and water resource protection issues is not a theoretical exercise in this case. These matters are of very real and vital concern. Attached hereto as Exhibit "D" is a letter from Mr. Henry C. Papuga, Manager of the Milford Water Company (The Town of Milford and its residents are supplied water by this private, for profit company, not by any department or agency of local government). As his letter makes clear, his company has water supply wells, not just in the general area, but *directly abutting the GU site*. These wells are already being adversely affected by petroleum infiltration and the GU property, without development, is being investigated as a potential source. At a minimum, maintaining the levels of environmental protection provided by the Milford By-Laws and the Wetlands Protection Act is vital to protecting the water supply, and the health, of the people of Milford.

D.  The Controversy.

The last paragraph of the November 25, 2003 letter from counsel for GU (Exhibit "C") succinctly sets forth the controversy proposed to be resolved by this Petition for Declaratory Order. As is stated in that paragraph, it is the position of GU and BRT that the Town cannot prevent GU and the BRT from utilizing the Milford GU property as they propose. They premise their position upon decisions of the Surface Transportation Board, among others, and the provisions of the Interstate Commerce Commission Termination Act (ICCTA) and that Act's preemptive effect. It has been their position, and continues to be their position, that Milford Zoning, and presumably the Wetlands Protection Act, are preempted by virtue of 49 USC Section 10501(b). Conversely, it is the position of the Town of Milford that Milford is not preempted from enforcing its zoning by-laws and the provisions of the Wetlands Protection Act, and other provisions of state and local law under the circumstances as described above.

10

ARGUMENT

    Under the Administrative Procedures Act, this Board has the authority and discretion to issue a declaratory order which will terminate a controversy or remove uncertainty. 5 USC 554(e); 49 USC 727. <u>Friends of the Aquifer, City of Hauser, et al.</u> STB Docket No. 33966, August 15, 2001 at page 3. In the case here presented to the Board there is a clear controversy as to whether or not Town of Milford Zoning By-Laws and the Commonwealth of Massachusetts environmental statutes are preempted by virtue of 49 USC 10501(b).

    There is no question but that under the above federal statute, as amended by the ICCTA, the Surface Transportation Board has exclusive jurisdiction over rail transportation and further that there can be a statutory preemption of the application of state and local law. Further, the breadth of the possible preemption is also beyond dispute. As was stated in <u>CSX Transportation Inc. vs. Georgia Pub. Serv. Commission</u>, 994 F.Supp. 1573, 1581 (N.D.GA 1996), "[i]t is difficult to imagine a broader statement of Congress' intent to preempt state regulatory authority over railroad operations" than is contained in Section 10501(b).

    Notwithstanding the breadth of preemption, the courts, and this Board, must take cognizance of the spirit of caution and prudence taught by the United States Supreme Court. In <u>CSX vs. Easterwood</u>, 507 US 658, (1993) the Supreme Court stated that lower courts should be "reluctant to find preemption" pointing out that preemption would not lie unless it is the "clear and manifest purpose of Congress". The Supreme Court went onto state that "We are not prepared to find preemption solely on the strength of general mandates of federal preemption." <u>Id.</u> at 664.

    To find the manifest intent and purpose of Congress, one must first (as this board has done carefully in recent decisions) look closely at the express provisions of the statute from which the preemption concept flows. Under Section 10501(b) the jurisdiction of the board is over "(1) transportation by *rail carriers,* ..."

By the plain language used by Congress, it is the transportation, and related activities, undertaken by *rail carriers* that benefit from preemption, not activity which may be related to rail transportation but which is provided and undertaken by non-rail carriers like BRT.  As was stated in Fletcher Granite Company, LLC STB Docket No. 34020, June 25, 2001, under the preemption provisions of the ICCTA, "....zoning ordinances and local land use permit requirements are preempted as to facilities that are an *integral part of the railroad's interstate operations.*"  Id. at page 3.  Citing Norfolk Southern RY. vs. City of Austell, No. 1:97-cv-1018-RLV, 1997 US Dist. LEXIS 17236, at 17 n. 6 (N.D. GA. 1997) and Village of Ridgefield Park vs. New York, Susquehanna & Western RY., 750A 2nd 57(N.J. 2000).

BRT proposes to undertake in Milford the *same receiving and trucking operation as it currently undertakes in South Boston*.  BRT's operations and activity are not now, nor will they be if the move to Milford is undertaken, in any way "integrally related" to any interstate rail operations of GU.

The above very significant distinction between activities of a rail carrier and activities of a non-rail carrier entity have been noted and found dispositive by federal courts.  In Florida East Coast Railway Company vs. City of West Palm Beach,  110 F.Supp. 2nd 1367, aff'd. 266 F. 3rd 1324(2001), a company known as Rinker Materials Corporation was proposing to lease facilities of the Florida East Coast Railway (FEC) and to establish a facility to receive aggregate material by rail and then to distribute from that point by truck.  Citing this board's Riverdale decision (STB Fin. Docket No. 33466) the District Court held that "Activities and facilities not integrally related to the provisions of interstate rail are not subject to (STB) jurisdiction or to federal preemption." 110 F. Supp. 2nd at 1378.  In upholding the lower court decision the 11th Circuit Court of Appeals held that "....Rinker's use of the property at the 15th Street Yard and the activities there performed by Rinker serve no public function and provide no valuable service to FEC; rather, the arrangement between FEC and Rinker merely facilitates Rinker's operation of a private distribution facility on FEC owned premises." 266 F. 3rd at

"....Rinker's use of the property at the 15th Street Yard and the activities there performed by Rinker serve no public function and provide no valuable service to FEC; rather, the arrangement between FEC and Rinker merely facilitates Rinker's operation of a private distribution facility on FEC owned premises." 266 F. 3rd at 1336. This last holding nicely characterizes what will be the arrangement between BTR and GU in Milford if allowed to go forward.

A very recent decision by the Director of the Office of Proceedings is essentially dispositive of the issues here raised by Milford. That case was <u>Hi Tech Trans, LLC</u> STB Finance Docket No. 34192, decided August 14, 2003.

In <u>Hi Tech</u>, the petitioning company was involved in transportation of construction and demolition (C&D) debris. The company had an arrangement with the Canadian Pacific Railway to use their Oak Island Yard in Newark New Jersey. The company would bring customers C&D debris to the yard by truck, unload it, and then load it onto trains for transportation to disposal sites. <u>Hi Tech</u>, page 2. The company, Hi Tech Trans, LLC *was not a rail carrier*. The foregoing scenario is the mirror image of what is proposed to take place at the Milford site under consideration. Here, BRT, also not a rail carrier, would receive steel at the Milford site, unload it, and then load it onto trucks for transportation to customers across New England. From any practical or legal perspective, the essential operations would be the same as in <u>Hi Tech</u> and the end result should be the same; i.e. a finding that state and local regulations are not preempted.

In <u>Hi Tech</u>, the issue was squarely presented and argued by the company advocating strongly that preemption applied whether or not the subject facilities were operated directly by a rail carrier. They even argued, as BRT presumably would in the case under consideration, that "…..the transloading services performed by Hi Tech at Oak Island Yard are one of the most integral components of interstate rail movement -- it is elementary that C&D debris cannot be transported by rail if it cannot be loaded onto rail cars." (<u>Hi Tech Trans, LLC</u>, Petition for Declaratory

13

Petition for Declaratory Order, June 16, 2003, page 13). The Director correctly rejected such seemingly compelling arguments, for the very sound reason that they failed to account for the expressed intent of Congress that preemption apply only to activities of "rail carriers" and not any activity which may be related to rail transportation which might be performed by non-carrier entities.

The precise reasoning and clear statutory analysis of the Director deserves particular consideration in this matter. In <u>Hi Tech</u>, at page 5, the Director carefully reviewed the relevant statutory scheme.

> The Board has jurisdiction over "transportation by rail carrier." 49 U.S.C. 10501(a). The term "transportation" is defined to include a "facility" related to the movement of property by rail and "services" related to that movement by rail, including receipt, delivery, transfer, and handling of property. 49 U.S.C. 10102(9)(A), (B). "Rail carrier" is defined as a person providing "common carrier railroad transportation for compensation." 49 U.S.C. 10102(5). Where the Board has jurisdiction over transportation by rail carrier, that jurisdiction is "exclusive," 49 U.S.C. 10501(b), and state and local laws and regulations are generally preempted. To come within the preemptive scope of 49 U.S.C.10501(b), these activities must be both: (1) transportation; and (2) performed by, or under the auspices of, a rail carrier.

The Director then applied the statutory analysis to the activities proposed by the company and reasoned as follows:

> There is no dispute that Hi Tech's transloading activities are with the broad definition of transportation. The Board has consistently found such activities to be transportation under 49 U.S.C. 10102(9). <u>See Green Mountain Railroad Corporation – Petition for Declaratory Order</u>. STB Finance Docket No. 34052 (STB served May 28, 2002) <u>(Green Mountain)</u> (cement transloading facility); <u>Joint Petition for Declaratory Order – Boston and Maine Corporation and Town of Ayer, MA</u>, STB Finance Docket No. 33971 (STB served May 1, 2001) <u>(Ayer)</u> (automobile unloading facility). This is only part of the statutory equation, however. To be preempted, the transportation activities must be performed by a rail carrier.

14

By Hi Tech's reasoning, any third party or non-carrier that even remotely supports or uses rail carriers would come within the statutory meaning of transportation by rail carrier. The Board and its predecessor, the Interstate Commerce Commission, have indicated that the jurisdiction of this agency may extend to certain activities and facets of rail transloading facilities, but that any such activities or facilities must be closely related to providing direct rail service. In every case, jurisdiction was found and local regulations relating to transportation facilities preempted only when those facilities have been operated or controlled by a rail carrier. See Green Mountain; Ayer; Borough of Riverdale – Petition for Declaratory Order – The New York Susquehanna and Western Railway Corporation, STB Finance Docket No. 334656 (STB served Sept. 10, 1999); Growers Marketing Co. v. Pere Marquette Ry., 248 I.C. C. 215, 227 (1941); see also Norfolk S. Ry. V. City of Austell, No. 1:97-CV-1081-RLV, 1997 U.S. Dist. LEXIS 17236 (N.D. GA Aug. 18, 1997). Here Hi Tech's activities are not performed by a rail carrier.

Hi Tech pages 5-6

Finally, this Board should take cognizance of the decision of a Federal Magistrate Judge in the even more recent decision in CNFR Operating Company, Inc. vs. City of America Canyon, 282 F. Supp. 2nd 1114, 2003 WL 22078058 (N.D. Cal.). Although this decision is an interlocutory one denying a preliminary injunction request, its reasoning, based in part upon Florida East Coast Railway Company, supra, is very supportive of this Board's Hi Tech decision. CNFR is a case involving a non-rail carrier company utilizing property of a rail carrier. Like the BTR proposal now at issue, the company in CNFR was to receive product over rail at the rail carrier's facility and then load that product onto trucks and deliver the materials to a local customer. The company was seeking injunctive relief to stop the enforcement of local regulation.

In denying the injunctive relief sought, the Magistrate Judge held that the preemptive language of Section 10501(b) "…, does not reach local regulation of activities not integrally related to rail service." Id. at 1118 citing Florida East Coast Railway Company, supra. Addressing an argument essentially the same as that put forth by BRT in asserting a right to preemption of Milford's regulatory activities, the Magistrate Judge stated at page 1118 – 1119:

15

13

At the hearing, plaintiffs argued that because Apex hauls goods from its facility at the railroad terminal to the customer who ordered the goods, it completes the process of transporting goods by rail and so is subject only to ICCTA regulation. Taken to its logical conclusion, plaintiffs' argument would mean that any trucking company who picks up goods from a railroad terminal for delivery to a customer would be free from local regulation. Congress, however, could not have intended such an expansive interpretation of the ICCTA's reach. See, eg. <u>Florida East Coast Railway</u> <u>Company</u>, 266 F. 3rd at 1328-31.

## CONCLUSION

This is a case which is ripe for declaratory order in order so as to clarify the rights of the Town of Milford with respect to the proposal of BRT for utilization of the GU property in Milford. For all of the reasons, and based upon the decisions, cited above, a declaratory order should issue holding that the Milford Zoning By-Laws and the Massachusetts Wetlands Protection Act may be enforced in relation to the BRT proposal.

WHEREFORE, and in view of all of the foregoing, the Town of Milford respectfully requests that this board grant the petition and enter a declaratory order holding that the Milford Zoning By-Laws and the Massachusetts Wetlands Protection Act, and other applicable local and state regulation and law, may be enforced in relation to the proposal by BRT for utilization of the GU property.

Respectfully Submitted,
By:

Gerald M. Moody, Esq.
Town Hall - 52 Main Street
Milford, MA 01757
BBO # 352380
Tel. (508) 634-2302

**Attorney For the Town of Milford**

Dated:

16

# EXHIBIT
"A"



# EXHIBIT
## "B"

Robert C. Krafty
Railroad Consultant
25 Mallard Road
Glenmont, NY 12077
518-461-1397

September 16, 2003

Gerald M. Moody, Esq.
Town Counsel
Legal Department
52 Main Street
Milford, MA    01757-2622

Re:  Grafton & Upton Railroad Yard, Milford, MA

Dear Gerry:

I hope you had a good vacation and you are well rested.

Per our phone conversation, I have attached a copy of our Milford Yard map.  On the right side of the map you see Milford & Woonsocket Railroad.  That is now the CSX Milford Branch.  The rail cars will come in on that track and then switch back into our yard.

They will come past Union Street.  This is shown on the upper right side of the map.  Mr. Marsh will load and unload in the yard.  The truck ingress and egress will be over the Railroad right of way.  They trucks will cross Vernon Street and then take a left onto Depot Street to gain access to Rt. 140.  All truck traffic will be out and away from the Town.

Mr. Marsh will receive rail cars of Steel.  They will be transported via truck to various locations in New England.  He will also erect a building on the site.

Any assistance you can give us would be greatly appreciated.  Since additional track must be added and the existing track upgraded it is important to complete the work before ground freezes.

If you have any questions or require additional information please call.

20

Sincerely,

Robert C. Krafty

21

EXHIBIT
"C"

# FLYNN & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

189 STATE STREET
SIXTH FLOOR
BOSTON, MASSACHUSETTS 02109
TELEPHONE (617) 722-8253
FACSIMILE (617) 722-8254
E-MAIL: *flynnlaw@flynnassoc.com*

DETROIT OFFICE:

PENOBSCOT BUILDING
645 GRISWOLD STREET
SUITE 3253
DETROIT, MICHIGAN 48226
TELEPHONE (313) 963-3033
FACSIMILE (313) 963-3011

MICHAEL B. FLYNN*
RICHARD A. DAVIDSON, JR.
LORI A. MCCARTHY*
JOHN E. YOUNG, IV
WILLIAM ROA

*also admitted in NY
*also admitted in CT

OF COUNSEL:
DURKIN, MCDONNELL, CLIFTON,
O'DONNELL & MOORE

November 25, 2003

**SENT VIA 1ST CLASS U.S. MAIL
& FACSIMILE:** (508) 634-2324

Gerald M. Moody, Esq.
Town Counsel
Legal Department
52 Main Street
Milford, MA 01757-2622

RE: <u>GRAFTON & UPTON RAILROAD COMPANY</u>

Dear Attorney Moody:

Thank you for meeting with us on November 14, 2003, concerning the Grafton and Upton Railroad Company's ("GU") plans for the use of its Milford Yard. You requested that we contact the Boston Railway Terminal Corporation ("BRT") and obtain additional information concerning its assets and business activities to assist your presentation to the Board of Selectmen regarding the GU's proposed use.

The information provided by BRT is as follows:

BRT is a Massachusetts corporation having a regular place of business at 160 West First Street, South Boston, where it occupies approximately five acres of land and 7,000 feet of track. It owns two onsite office trailers, one 100-ton diesel electric switching locomotive, one over-the-road truck-tractor and a number of semi-trailers of varying types.

BRT's business consists of receiving shipments of steel by rail and truck and shipping same to customers by truck. It also performs some fabrication work, involving cutting and welding. In the past twelve months they have received 141 railcars (which averages about 11 cars per month) which generated approximately 450 outbound trailer-loads (averaging 37 loads per month or 9 loads per week). The BRT receives railcars from CSX Transportation.

23

Gerald M. Moody, Esq.
November 25, 2003
Page 2

The BRT desires to relocate its operations to the GU's Milford Yard and would perform substantially the same operations at this location. It will set up both office-trailers in the yard at a location convenient for operations near available utility connections. Eventually, it desires to erect a steel building approximately 60' x 200' that will straddle at least one of the yard tracks so that operations could be performed indoors. It will access Depot Street by paving the existing railroad right-of-way from Charles River Street to Vernon Street and plan to direct most truck-traffic to Depot Street onto Main Street and then Route 140. Outbound oversize loads in excess of 75' overall length would use this route even if bound to the north, as the difficulty of navigating Routes 16 and 85 north is too extreme.

As you are aware, it is the GU's position, as expressed in prior correspondence and during our meeting, that the town cannot prevent it and the BRT from improving the Milford Yard and thereafter moving rail shipments of freight through the yard. This position is supported by the clear weight of the applicable case law and the Surface Transportation Board's findings asserting the Interstate Commerce Commission Termination Act's preemptive effect. The GU requests that the Town reconsider its position on this issue, given that the GU and BRT plan to proceed with their railroad activities immediately, and that the Town respond in writing by December 4, 2003.

Thank you for your attention to this matter.

Sincerely,

Richard A. Davidson, Jr.

pc:    Bridget Lucey
       Bonnie Cohen
       Bob Krafty

# EXHIBIT
## "D"



# MILFORD WATER COMPANY

66 Dilla Street • Milford, Massachusetts 01757-1104
www.milfordwater.com • 508-473-5110 • Fax 508-478-7997

December 4, 2003

Town of Milford Legal Department
Town Hall
52 Main Street
Milford, MA 01757

Attn: Gerald M. Moody, Esquire
       Town Counsel

Re: **Grafton & Upton Railroad Company (GURC) use of Milford Yard**
    **Development by Boston Railway Terminal Corporation (BRTC)**

Dear Attorney Moody:

Thank you for your recent information regarding the intent of the Boston Railway Terminal Corporation (BRTC) to develop a 'Milford Yard' for the purpose of steel shipments and trucking.

As you are aware, the Milford Water Company owns and operates four public water supply wells (known as the Godfrey Brook wells) on the abutting property. The GURC property is located within the Godfrey Brook's Zone II protection zone (a copy is attached) as well as within the Milford Water Resource Protection District. Not only is the property located within the Zone II area but it also abuts the more critical Zone I restriction area.

Because of a recent detection of petroleum contamination in our Godfrey Brook drinking water, the Milford Water Company is developing a very aggressive strategy to detect the source, determine the responsible party, initiate special treatment and pursue all avenues for financial reimbursement. We have installed observation wells and collected our first round of water samples. The GURC property that is mentioned for development (Milford Yard) is property that is affected by the contamination and is being investigated by us.

Attorney Davidson's opinion that the Town can not prevent development of the property by the BRTC may be subject to debate and interpretation

26

... ice Public Service for Over 100 Years

but the Milford Water Company understands that the Interstate Commerce Commission Termination Act may not have complete authority in cases that impact public health. Certainly, this property and the potential use have issue.

If the BRTC continues to develop this property without thoroughly addressing all matters important to protection of our abutting water supply, we will use any means available to us to prevent this project.

Sincerely,

Henry C. Papuga, Manager
Milford Water Company

encl.

27



CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing Petition and Exhibits were served, by U.S. Mail, postage prepaid, first class or equivalent, this 8th day of December 2003 upon the following parties:

1.     Richard A. Davidson, Jr., Esquire
   Flynn & Associates P.C.
   189 State Street, 6th Floor
   Boston, MA 02109
   Counsel for Grafton & Upton Railroad

2.     Grafton & Upton Railroad Company
   Depot Street
   Hopedale, MA 01747

3.     Boston Railway Terminal Corporation
   11-21 Fargo Street
   Boston, MA 02210

Dated: December 8, 2003

Gerald M. Moody, Esq.
Town Hall – 52 Main Street
Milford, MA 01757
(Tel.) 508-634-2302