# EXHIBIT "5"

**Case** (Released after 10:30 AM)
**Docket No.**           **Title**
FD 34192 1               HI TECH TRANS LLC--PETITION FOR DECLARATORY ORDER-- NEWARK, NJ

## Decision Summary
DENIED HI TECH TRANS, LLC'S REQUEST FOR A DECLARATORY ORDER AND DISCONTINUED THIS PROCEEDING.

## Download Files
The WordPerfect (WPD) version of this decision is provided as a courtesy and should not be used for citation purposes. The PDF file represents the official Board decision.

**WordPerfect**           **Graphics/Maps/Figures:**
- 33739.wpd               - 33739.pdf

Size of PDF File: **0.04** MB

Approximate download time at 28.8 : **0.2** Minute(s)

**Note:**
Some installations of Adobe Acrobat 3 browser plug-ins cannot open large PDF files. If you experience problems viewing our files, we recommend upgrading to an Acrobat 4 reader available free at **www.adobe.com**.

## Full Text of Decision
33739                SERVICE DATE - LATE RELEASE AUGUST 14, 2003
DO

### SURFACE TRANSPORTATION BOARD

### DECISION

STB Finance Docket No. 34192 (Sub-No. 1)

HI TECH TRANS, LLC
–PETITION FOR DECLARATORY ORDER–
NEWARK, NJ

Decided: August 14, 2003

On June 17, 2003, Hi Tech Trans, LLC (Hi Tech) filed a petition for a declaratory order seeking a determination that the Board has exclusive jurisdiction over a truck-to-rail transloading facility operated by Hi Tech and located on property of Delaware & Hudson Railway Company, Inc. d/b/a Canadian Pacific Railway (CP) at the Oak Island Yard in Newark, NJ, and that therefore regulation of that facility by the New Jersey Department of Environmental Protection (NJDEP) is preempted under 49 U.S.C. 10501(b). On July 7, 2003, the Hudson County Improvement Authority and Essex County Utilities Authority (Authorities) and NJDEP filed replies. The petition for declaratory order will be denied for the reasons discussed below.

### PRELIMINARY MATTERS

NJDEP and the Authorities assert that Hi Tech is attempting to relitigate the general claim and

issues that were decided in Hi Tech Trans, LLC – Petition for Declaratory Order – Hudson County, NJ, STB Finance Docket No. 34192 (STB served Nov. 20, 2002) (Hi Tech I). That decision addressed the narrow issue of whether local regulation of trucks carrying construction and demolition (C&D) debris on public roads en route to Hi Tech's truck-to-rail transloading facility is preempted by the Board's exclusive jurisdiction over interstate rail transportation under 49 U.S.C. 10501(b). The decision pertained only to activities that extended beyond the activities at the transloading facility. Here, Hi Tech is asking the Board to address whether NJDEP's attempted regulation and closure of the transloading facility itself, through the issuance of a cease and desist order, also is preempted by the Board's exclusive jurisdiction. Furthermore, NJDEP's cease and desist order was not issued until May 28, 2003, after the decision in Hi Tech I. Thus, the issues presented by the instant petition are clearly distinct from the issues decided in Hi Tech I.

## BACKGROUND

As pertinent here, Hi Tech contracts with shippers for the transportation of C&D debris. Hi Tech contracts for trucks to transport the C&D debris from the shippers' construction sites to the truck-to-rail transloading facility located in CP's Oak Island Yard, where Hi Tech unloads the C&D debris from the trucks and later reloads it onto rail cars. Hi Tech then directs CP to transport the rail cars containing the C&D debris to disposal sites on or near CP's network or to points of interchange with other carriers.

Hi Tech operates its transloading facility under an Operational License Agreement dated November 6, 2000, between Hi Tech and CP (License Agreement). The License Agreement allows Hi Tech to use a portion of CP's Oak Island Yard for transloading purposes. Under this license, Hi Tech is responsible for constructing and maintaining its transloading facility and CP disclaims responsibility or liability for Hi Tech's operations. The License Agreement also requires Hi Tech to conform with Federal, state and local environmental regulations.

Under a Transportation Agreement, also dated November 6, 2000 (Transportation Agreement), Hi Tech is solely responsible for loading C&D debris onto rail cars at its own expense. CP does not hold itself out to provide C&D debris transloading service, quote rates for such services, or charge customers for it. CP is responsible only for transporting the loaded rail cars. In the Transportation Agreement, CP and Hi Tech disclaim the creation of an employment or agency relationship between them, and the agreement provides that neither party may represent that such a relationship exists. The Transportation Agreement also requires Hi Tech to comply with all applicable Federal, state and local laws, including obtaining necessary permits.

Between April 2000 and October 2001, Hi Tech sought four informal, non-binding staff opinions relating to the operation of the transloading facility. In the first three opinion letters, the Board's Secretary informally opined that, based on Hi Tech's statement that it planned to file for authority as a common carrier, operation of a transloading facility by a rail carrier was generally exempt from local environmental and zoning permitting requirements. Hi Tech, however, never obtained common carrier authority from the Board. Yet, after withdrawing its notice of exemption, Hi Tech represented to its customers that it is operating pursuant to authority issued by the Board.

In its fourth request for an informal staff opinion, Hi Tech asked whether the State or counties could interfere with trucks hauling C&D debris en route to its transloading facility by directing them to a truck-to-truck transfer site. On November 15, 2001, the Secretary responded that the Board's preemption authority would not seem to include the movement of trucks over public roads en route to a transloading facility. In a letter dated October 18, 2002, Hi Tech informed its customers that it had received three favorable opinions from the Board concerning its "authority" and "rights" to operate its transloading

facility, adding favorable excerpts from each opinion, but failed to inform its customers of: the adverse fourth opinion; the fact that it did not have common carrier authority; or that a formal proceeding was pending before the Board in Hi Tech I.

In Hi Tech I, it was found that activities relating to the transportation of C&D debris over public roads en route from construction sites to a truck-to-rail transloading facility were not within the Board's jurisdiction and, therefore, preemption under 49 U.S.C. 10501(b) does not apply. Apparently relying on Hi Tech I, the United States District Court, District of New Jersey, in Civil Action No. 02-3781, issued an April 1, 2003 opinion and order finding that Hi Tech was not a rail carrier. Shortly after the court's findings, on May 28, 2003, NJDEP served an administrative order alleging violations of its regulations and directing Hi Tech to cease and desist the operation of an illegal solid waste facility, under N.J.A.C. 7:26-2.8(f), and the operation of an uncertificated public utility, under N.J.A.C. 7:26H-1.6, before June 17, 2003. Hi Tech filed a request for a hearing on the NJDEP order, seeking a stay and emergency relief from the enforcement of the cease and desist order, and, on June 30, 2003, a NJDEP Commissioner directed the agency to temporarily forbear from seeking judicial enforcement of the cease and desist order until August 29, 2003.

Hi Tech alleges that its operation of the transloading facility constitutes transportation by rail carrier and is therefore subject to the Board's exclusive jurisdiction under 49 U.S.C. 10501. Hi Tech contends that the decision in Hi Tech I implied that its transloading facility fell within the Board's exclusive jurisdiction, although it recognizes that the decision did not formally reach that issue. The Authorities and NJDEP respond that activities that constitute transportation must be provided by a rail carrier to fall within the Board's exclusive jurisdiction and, because Hi Tech is not a rail carrier, its activities are not subject to the Board's jurisdiction, and therefore state and local regulation is not preempted pursuant to 49 U.S.C. 10501(b).

DISCUSSION AND CONCLUSIONS

Under 5 U.S.C. 554(e) and 49 U.S.C. 721, the Board may issue a declaratory order to terminate a controversy or remove uncertainty. It will not be necessary for the Board to institute a declaratory order proceeding here, because it is clear that the Board does not have jurisdiction over truck-to-rail transloading activities that are not performed by a rail carrier or under the auspices of a rail carrier holding itself out as providing those services.

The Board has jurisdiction over "transportation by rail carrier." 49 U.S.C. 10501(a). The term "transportation" is defined to include a "facility" related to the movement of property by rail and "services" related to that movement by rail, including receipt, delivery, transfer, and handling of property. 49 U.S.C. 10102(9)(A), (B). "Rail carrier" is defined as a person providing "common carrier railroad transportation for compensation." 49 U.S.C. 10102(5). Where the Board has jurisdiction over transportation by rail carrier, that jurisdiction is "exclusive," 49 U.S.C. 10501(b), and state and local laws and regulations are generally preempted. To come within the preemptive scope of 49 U.S.C. 10501(b), these activities must be both: (1) transportation; and (2) performed by, or under the auspices of, a rail carrier.

Whether a particular activity constitutes transportation by rail carrier under section 10501(b) is a case-by-case and fact-specific determination. In presenting the facts in this proceeding, Hi Tech has "muddied the waters" by seeking and receiving multiple informal staff opinions under various hypothetical factual situations favorable to Hi Tech and then using them or parts of them to its advantage. In addition to the four informal staff opinions, Hi Tech has also filed, and then withdrawn, a notice of exemption to obtain common carrier authority, filed two formal petitions for declaratory orders, filed the emergency petition, and filed, and withdrawn, a petition for clarification seeking a

determination of whether it is a rail carrier under section 10102(5). This decision addresses the latest in that series of filings. A careful analysis of Hi Tech's actual operations, however, leads to the conclusion that its truck-to-rail transloading operations do not fall within the Board's exclusive jurisdiction over rail transportation.

There is no dispute that Hi Tech's transloading activities are within the broad definition of transportation. The Board has consistently found such activities to be transportation under 49 U.S.C. 10102(9). See Green Mountain Railroad Corporation – Petition for Declaratory Order, STB Finance Docket No. 34052 (STB served May 28, 2002) (Green Mountain) (cement transloading facility); Joint Petition for Declaratory Order – Boston and Maine Corporation and Town of Ayer, MA, STB Finance Docket No. 33971 (STB served May 1, 2001) (Ayer) (automobile unloading facility). This is only part of the statutory equation, however. To be preempted, the transportation activities must be performed by a rail carrier.

NJDEP and the Authorities argue that Hi Tech is not a rail carrier and that its activities are not a part of CP's rail service, despite being located on CP's property. Hi Tech does not argue that it is a rail carrier. Instead, it contends that the test to determine whether its facility is considered transportation by rail carrier is whether it is integrally related to interstate rail service. Hi Tech argues that its facility is integrally related to CP's interstate rail service because its transloading activities benefit CP and because C&D debris cannot be transported by rail without first being loaded into rail cars. Essentially, Hi Tech maintains that there is no legal distinction between a transloading facility operated by a noncarrier licensee and one operated by a rail carrier.

By Hi Tech's reasoning, any third party or noncarrier that even remotely supports or uses rail carriers would come within the statutory meaning of transportation by rail carrier. The Board and its predecessor, the Interstate Commerce Commission, have indicated that the jurisdiction of this agency may extend to certain activities and facets of rail transloading facilities, but that any such activities or facilities must be closely related to providing direct rail service. In every case, jurisdiction was found and local regulations relating to transportation facilities preempted only when those facilities have been operated or controlled by a rail carrier. See Green Mountain; Ayer; Borough of Riverdale – Petition for Declaratory Order – The New York Susquehanna and Western Railway Corporation, STB Finance Docket No. 33466 (STB served Sept. 10, 1999); Growers Marketing Co. v. Pere Marquette Ry., 248 I.C.C. 215, 227 (1941); see also Norfolk S. Ry. v. City of Austell, No. 1:97-CV-1081-RLV, 1997 U.S. Dist. LEXIS 17236 (N.D. Ga. Aug. 18, 1997). Here, Hi Tech's activities are not performed by a rail carrier.

The facts of this case establish that Hi Tech's relationship with CP is that of a shipper with a carrier. Hi Tech brings cargo and loads it onto rail cars, and CP, under the Transportation Agreement, hauls it to a destination designated by Hi Tech. In fact, CP describes Hi Tech as its largest shipper at the Oak Island Yard, and Hi Tech boasts the same. Moreover, CP disclaims any agency or employment relationship with Hi Tech and, under the License Agreement, the parties all but eliminate CP's involvement in the operation of the transloading facility and its responsibility for it. There is no evidence that CP quotes rates or charges compensation for use of Hi Tech's transloading facility. Thus, CP's level of involvement with Hi Tech's transloading operation at its Oak Island Yard is minimal and insufficient to make Hi Tech's activities an integral part of CP's provision of transportation by rail carrier.

In sum, Hi Tech's activities at its transloading facility at CP's Oak Island Yard and related activities are not part of "transportation by rail carrier" as defined under 49 U.S.C. 10501(a). Hi Tech is merely using CP's property to transload cargo. Thus, the Board does not have jurisdiction over those activities, and section 10501(b) preemption does not apply to the state and local regulations at issue here. Therefore, Hi Tech's petition to institute a declaratory order proceeding will be denied.

This action will not significantly affect either the quality of the human environment or the conservation of energy resources.

It is ordered:

1. NJDEP's and the Authorities' requests that Hi Tech's letters dated July 10, 2003, and July 31, 2003, be rejected as impermissible replies to a reply under 49 CFR 1104.13(c) are denied.

2. Hi Tech's request for a declaratory order proceeding is denied and this proceeding is discontinued.

3. This decision is effective on the date of service.

By the Board, David M. Konschnik, Director, Office of Proceedings.

Vernon A. Williams
Secretary

# EXHIBIT "6"

**Case**
**Docket No.**          **Title**
FD 34277 0              H&M INTERNATIONAL TRANSPORTATION INC -- PETITION FOR DECLARATORY ORDER

**Decision Summary**
DENIED A PETITION FILED BY H&M REQUESTING THAT THE BOARD INSTITUTE A DECLARATORY ORDER PROCEEDING AND DETERMINE THAT H&M IS NOT A RAIL CARRIER SUBJECT TO THE BOARD'S JURISDICTION.

**Download Files**
The WordPerfect (WPD) version of this decision is provided as a courtesy and should not be used for citation purposes. The PDF file represents the official Board decision.

**WordPerfect**         **Graphics/Maps/Figures:**
- 33437.wpd             - 33437.pdf

Size of PDF File: **0.01 MB**

Approximate download time at 28.8 : **0.1** Minute(s)

Note:
Some installations of Adobe Acrobat 3 browser plug-ins cannot open large PDF files. If you experience problems viewing our files, we recommend upgrading to an Acrobat 4 reader available free at **www.adobe.com**.

**Full Text of Decision**
33437                           SERVICE DATE - NOVEMBER 12, 2003
DO

SURFACE TRANSPORTATION BOARD

DECISION

STB Finance Docket No. 34277

H&M INTERNATIONAL TRANSPORTATION, INC. –
PETITION FOR DECLARATORY ORDER

Decided: November 10, 2003

In a petition filed on March 4, 2003, H&M International Transportation, Inc. (H&M) requests that the Board institute a declaratory order proceeding and determine that H&M is not a rail carrier subject to the Board's jurisdiction. This request arises from a January 22, 2002 decision by the Railroad Retirement Board (RRB) finding that H&M is a rail carrier operating in interstate commerce with regard to 18 employees at its Marion, AR facility. For the reasons discussed below, the request will be denied.

BACKGROUND

H&M is a privately held corporation, with principal offices in Jersey City, NJ. The company operates warehousing, distribution, trucking terminal, and intermodal facilities at Marion and several

other locations in the United States.

According to H&M, the company provides similar services at each of its intermodal facilities. H&M primarily loads and unloads trailers and containers on and off railroad flat cars; moves trailers between parking places and ramp tracks for loading or unloading; lifts, stacks, flips and racks trailers and chassis in connection with the ramping process; ties down, secures, and releases equipment loaded onto or unloaded from rail cars; and inspects trailers and cargo for safety and inventory purposes. It provides these services pursuant to agreements with the respective railroads serving each facility.

H&M states that the company's Marion facility, while substantially similar to its other facilities and operated under a similar arrangement, differs from the other facilities in two respects: (1) Marion is the only facility where the company leases the property; and (2) it is the only facility where H&M moves rail cars. The Marion facility consists of six storage and four loading tracks ranging from 6,770 to 8,300 feet in length, several buildings and underlying real property, various ramps, cranes, and other loading equipment owned or leased by H&M, and parking lots for trucks, chassis, containers, and trailers. Most of the facility is surrounded by a chain link fence. The UP mainline runs nearby and two UP lead tracks connect the mainline to the delivery tracks. H&M employees use two leased switch engines to move cars between the delivery tracks and storage and loading tracks inside H&M's facility as needed to facilitate the intermodal work of the company.

According to H&M, its agreements with UP reserve all common carrier rights and obligations to UP and contractually bar H&M from providing common carrier service. H&M says it is also physically unable to offer such service, as it cannot operate beyond the bounds of its facility. Moreover, H&M states that it has never held itself out to provide rail service to the public for compensation, has not actually performed rail service for anyone else for compensation or otherwise, and has not sought regulatory approval for any of its activities. H&M adds that it has never published or participated in any rates for providing rail services to the public, and has no railroad reporting marks or identification assigned by the Association of American Railroads.

DISCUSSION AND CONCLUSIONS

The Board has broad discretion to issue declaratory orders to terminate a controversy or remove uncertainty. 5 U.S.C. 554(e); 49 U.S.C. 721. The Board need not institute a declaratory order proceeding here, however, because the record makes clear that H&M is not a rail carrier subject to the Board's jurisdiction.

The Board has jurisdiction over "transportation by rail carrier." 49 U.S.C. 10501(a). The term "transportation" is defined to include a facility related to the movement of property by rail, and services related to that movement, including receipt, delivery, transfer, and handling of property. 49 U.S.C. 10102(9)(A), (B). A "rail carrier" is defined as "a person providing common carrier railroad transportation for compensation." 49 U.S.C. 10102(5).

Whether a particular activity constitutes transportation by rail carrier under section 10501 is a fact-specific determination. H&M's intermodal transloading activity could fit within the broad definition of transportation. See, e.g., Green Mountain Railroad Corporation – Petition for Declaratory Order, STB Finance Docket No. 34052 (STB served May 28, 2002) (cement transloading facility); Joint Petition for Declaratory Order – Boston and Maine Corporation and Town of Ayer, MA, STB Finance Docket No. 33971 (STB served May 1, 2001) (automobile unloading facility). But this is only half of the statutory requirement for Board jurisdiction under section 10501.

To fall within the Board's jurisdiction, the transportation activities must be performed by a rail

carrier, and the mere fact that H&M moves rail cars inside the Marion facility does not make it a rail carrier. To be considered a rail carrier under the statute, there must be a holding out to the public to provide common carrier service. <u>B. Willis, C.P.A., Inc. – Petition for Declaratory Order</u>, STB Finance Docket No. 34013 (STB served Oct. 3, 2001), <u>aff'd per curiam</u>, <u>B. Willis, C.P.A., Inc. v. STB</u>, No. 01-1441 (D.C. Cir. Nov. 26, 2002), <u>cert. denied</u>, 72 U.S.L.W. 3235 (Oct. 7, 2003) (No. 02-1498); <u>Hanson Natural Resources – Non-Common Carrier Status – Petition for Declaratory Order</u>, Finance Docket No. 32248 (ICC served Dec. 5, 1994). Here, however, H&M's operations are performed pursuant to agreements with UP that reserve for UP all common carrier rights and obligations and that, in fact, specifically bar H&M from providing common carrier service. Additionally, H&M has never received, nor sought, a license from the Board for common carrier freight rail operations under 49 U.S.C. 10901 (or an exemption from the licensing requirements pursuant to 49 U.S.C. 10502). Further, there is no evidence that H&M has provided any type of rail service to the public for compensation or otherwise, or held itself out as willing to do so. Indeed, the record shows that any rail-related activity performed by H&M is strictly in-plant, for H&M's convenience and benefit, and in furtherance of its non-rail primary business purpose.

Nor is there any evidence that UP has control over H&M's business operations. To the contrary, H&M has specifically stated that all car movements within its facility are "at the direction of, under the supervision of, and for the convenience of H&M." H&M Petition at 4. Moreover, the record indicates that UP's obligations and common carrier duty begin and end at the delivery tracks at the H&M facility. Finally, there is no evidence that the movement of cars inside the fence of H&M's Marion facility would be considered an integral part of UP's common carrier service.

For all of these reasons, the record shows that H&M is not a rail carrier subject to the Board's jurisdiction. No reason exists to institute a proceeding to gather additional evidence.

This decision will not significantly affect either the quality of the human environment or the conservation of energy resources.

<u>It is ordered</u>:

1. H&M's request to institute a proceeding is denied.

2. This decision is effective on November 12, 2003.

By the Board, David M. Konschnik, Director, Office of Proceedings.

Vernon A. Williams
Secretary