UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

FILED IN CLERK'S OFFICE
2004 JAN -9 A 11: 11
U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| GRAFTON AND UPTON RAILROAD COMPANY, </br> Plaintiff </br></br> v. </br></br> TOWN OF MILFORD, </br></br> Defendant | ) </br> ) </br> ) </br> ) </br> ) C.A. No.: 03-40291-NMG </br> ) </br> ) </br> ) </br> ) </br> ) |

## AFFIDAVIT OF LARRY L. DUNKIN

1. I, Larry L. Dunkin, am the Town Planner for the Town of Milford.

2. In mid-May of 2003 I received a telephone call from an individual who identified himself as Robert Krafty. Mr. Krafty indicated that he represented the interests of the Grafton & Upton Railroad (hereafter "GU") and that he wanted to meet and explain plans the GU had for its Milford property. I asked Mr. Krafty to provide some information in writing, which he did, through a letter dated May 19, 2003 which letter is attached hereto as Exhibit "A".

3. The May 19, 2003 letter explains the plans of GU as follows:

    We have requested the MBTA, per their letter agreement, to replace the switch in the CSX Milford Branch in order for us to gain access to our yard via rail. It is our intention to place a rail served customer on the property. Our customer will receive rail shipments of structural steel and pilings.

4. A meeting was thereafter scheduled for June 6, 2003 at the Milford Town Hall. I was present at this meeting together with Town Engineer Michael

Santora. Mr. Krafty was present with a couple who I believe were Bridget Lucey and her husband. Milford Town Counsel Gerald Moody was asked to come down to the meeting in the middle of the meeting.

5. At the June 6, 2003 meeting Mr. Krafty indicated that the GU was desirous of producing income from its various property holdings. The property he was interested in discussing was an area of unused railroad right-of-way owned by the Grafton & Upton Railroad behind an apartment complex in Milford known as Pheasant Run. Attached hereto as Exhibit "B" is a copy of the Milford Assessors Sheet which shows the area of the Grafton & Upton Railroad right-of-way. It is that area which shows as 3.9 acres designated parcel 16 and which is cross hatched. Behind Exhibit "B", marked "B-1" is an aerial photograph from the Mass GIS Website established by the Commonwealth of Massachusetts Department of Environmental Protection (hereafter DEP). The aerial photograph depicts essentially the area shown on Exhibit "B".

6. The Grafton & Upton locus behind the Pheasant Run Apartments (hereafter "the Locus"), is located in a Residential A (RA) Zoning District in Milford. This Residential District allows single family and two family residential construction and other low intensity uses. Commercial or Industrial uses are not allowed within this district. More specifically, contractors yards and/or trucking terminals are not allowed.

7. The locus is significantly impacted by wetlands. Much of the site is interspersed with wetlands. Between Vernon Streets and Depot Street both sides of the rail right-of-way are wetlands.

8. The Godfrey Brook, a perennial stream shown on Exhibit "B" runs under Vernon Street and along the locus. The Godfrey Brook runs in a northerly direction and flows into the nearby Godfrey Brook Well Fields. The Godfrey Brook is a "River" within the meaning of M.G.L. c. 131, Section 40.

9. Where the former GU Rails used to cross Depot Street they have long been removed as they have also been removed further down the line where they used to cross South Main Street. The rails that are still in place within the locus are old and deteriorated. According to employees who staff the abutting town cemetery, no trains have traveled over these tracks on the locus in well over 25 years.

10. Attached as Exhibits "C-1" through "C-4" are a series of photographs which show different views of the locus. All of these photographs were taken on January 1, 2004.

11. Exhibit "C-1" contains two photographs taken from Vernon Street. The photograph at the top shows the Godfrey Brook to the right with the locus being in the center. Rails can be noted to the left. The lower photograph on "C-1" looks from Vernon Street back towards Depot Street along the right-of-way.

12. Exhibit "C-2" contains two views from within the locus. The top photograph looks north along the old tracks. The lower photograph looks back towards Vernon Street. Although difficult to see because of trees and the lighting, the 138 unit Pheasant Run Apartment Complex shows just behind the trees in the lower photograph on "C-2".

13. Exhibit "C-3" has upon it two photographs which show the deteriorated condition of the tracks and cross ties on the locus. The lower photograph also shows the proximity of the Godfrey Brook running along the locus.

14. The top photograph on Exhibit "C-4" shows the active CSX line running to the left. The photograph also shows the recently installed "Switch" which turns towards the locus. This is the "Switch" referred to in the second

paragraph of the May 19, 2003 letter of Robert Krafty (Exhibit "A"). The lower photograph is another view of the CSX active line to the left with what remains of the old Grafton & Upton line which is barely visible on the right hand side of the photograph.

15. At the meeting on June 6, 2003 Mr. Robert Krafty indicated that GU, though essentially inactive for many years, desired to produce income from it's property. Mr. Krafty indicated that they had found a company, the Boston Railway Terminal Corporation (BRT) which was located in South Boston and which had to find a new location for its operations. Mr. Krafty stated that GU was going to lease the locus to BRT which would operate from the GU property. Mr. Krafty indicated that rail cars would come to the BRT site by way of the nearby CSX Line and then switch back to the GU locus. The BRT would receive rail cars of steel which they would unload from those rail cars. Steel would then be loaded by BRT onto trucks which would exit down the old GU right-of-way onto Depot Street for delivery to BRT customers. He also indicated that a building would be constructed on the site. As Mr. Krafty discussed the operations, all activity on the site would be undertaken by BRT which was to lease the locus from GU. There was no statement or indication that GU would be other than the landlord.

16. During the course of the June 6, 2003 meeting Mr. Krafty was informed that the locus was zoned for residential use and would not permit the activity he proposed. Mr. Krafty stated his belief that the locus would be exempt from local zoning because it was railroad property. At this point Town Counsel Moody was asked to come to the meeting. Attorney Moody asked Mr. Krafty to provide more information, including the basis for his assertion that the GU locus could be viewed to be exempt from zoning. Mr. Krafty indicated that he would see that the information was provided.

17. The next communication the Town of Milford had in relation to the GU locus was the letter from counsel for GU to Town Counsel Moody dated September 8, 2003 which letter is attached hereto as Exhibit "D". This was followed by the letter from Mr. Robert Krafty dated September 16, 2003 attached hereto as Exhibit "E".

18. Town Counsel Moody responded to the letter from counsel for Grafton & Upton with his response of October 10, 2003 wherein he stated his disagreement with the position of GU that the locus was exempt from local zoning. That letter from Attorney Moody is attached hereto as Exhibit "F".

19. Counsel for GU thereafter called Town Counsel Moody and asked if he would be willing to meet to discuss their disagreement as to whether or not the GU locus is exempt from local control. Town Counsel Moody agreed to meet and a meeting was scheduled for November 14, 2003. Counsel for GU, preparatory to that meeting, sent Attorney Moody a letter dated November 12, 2003 reiterating his position that the GU property was exempt from local control. A copy of that letter is attached hereto as Exhibit "G". At the meeting on November 14, 2003 counsel for the Grafton & Upton Railroad was accompanied by Mr. Robert Krafty and Bridget Lucy. The meeting was cordial and respective counsel reiterated and expanded upon their views as to the applicability and/or non-applicability of local zoning to the GU locus. Neither counsel changed his position. Attorney Moody did ask that counsel for GU provide more detailed information as to the precise nature and magnitude of the proposed BRT operations. That information was provided through a letter dated November 25, 2003 which is attached hereto as Exhibit "H". Attorney Moody indicated that he would discuss the matter in more detail with the Milford Board of Selectmen at its first meeting in December to ascertain whether or not there would be any change in the Town's position.

20. On December 4, 2003 counsel for GU did telephone Attorney Moody to ask whether or not there had been any change in position. Attorney Moody informed counsel for GU that there was no change in the Town's position and also informed him that the Milford Board of Selectmen had determined that, in light of the controversy, it did intend to file a Petition For Declaratory Order with the Surface Transportation Board seeking a Declaration from that Board as to the applicability of both the local zoning and the Commonwealth of Massachusetts Wetlands Protection Act. That petition was filed on or about December 8, 2003 and a copy thereof is attached to the complaint in this matter as Exhibit "E".

21. In preparation for the above referenced meeting with the Milford Board of Selectmen, a visit was made to the South Boston operations of BRT in order to determine the nature of those operations. Attached hereto as Exhibits "I-1" and "I-2" are photographs of the BRT South Boston locus. The BRT operations appear to be on two parcels separated by a public street. The photograph at the top of Exhibit "I-1" shows a portion of the BRT site, including trucks, stored steel, cranes and a locomotive which is presumably owned by BRT and operated on its site. The lower photograph on Exhibit "I-1" shows the same area, and the same locomotive, viewed from the street on the other side of what is shown on the top photograph.

22. The photograph at the top of Exhibit "I-2" shows the area of BRT operations on the other side of the street separating the site. The top photograph shows the cranes, storage steel, and trucks presumably used in the company's operations. The lower photograph is a close up of a truck and trailer already loaded with steel and marked, as designated, over sized load.

23. The Town of Milford is supplied with water by a private company known as the Milford Water Company. Milford Water Company is not a department of the town but a private water company chartered by the Legislature in the late

1800's. The Milford Water Company owns nearby property from which it operates four public water supply wells known as the Godfrey Brook Wells. Attached hereto as Exhibit "J" is a December 4, 2003 letter with attached plan from the Manager of the Milford Water Company. As that letter indicates the GU property is located with the Godfrey Brook's Zone 2 Protection District. As is indicated in that letter the development of the GU locus without appropriate environmental controls could have a serious negative impact on the public health.

24. Attached as Exhibit "K-1" is a print out from the Mass GIS Website established by the DEP. "K-1" shows the Zone II Water Protection Area which covers the entire locus. Attached as Exhibit "K-2" is a further print out from that same website which delineates the Zone II Area and shows specific wetland locations within the locus. The legend for "K-2" is set out on a separate sheet behind.

The Zone II Water Protection area was incorporated into the Milford Zoning By-Law as the Water Resource Protection District I (WRI), an overlay district. The Water Resources Protection District Provisions of the Milford Zoning By-Law were enacted in 1992 in response to the requirements of the State Department of Environmental Protection as contained within 310 CMR 22.21. The GU locus is in the WRI District and, even if the underlying zoning district were Industrial, the use proposed of the locus by BRT would be subject to application for an approval of a Special Permit by the Zoning Board of Appeals. Among the stated purposes of the Water Resources Protection District are the following:

> 7.1.A To promote the health, safety and general welfare of the community;
>
> 7.1.B To protect, preserve and maintain an existing and potential ground water supply and ground water recharge area within the town.

        7.1.C   To preserve and protect present and potential sources of water supply for the public health and safety.

Any application for a Special Permit would be required to be accompanied by detailed plans including a Recharge Plan with certification by a professional consultant that the subject property is not a significant recharge area; a drainage plan which must depict drainage design to flow first into catch basins with oil/gas separators; maintenance and reporting schedules to insure continued proper operation for required pollution control devices. Among the mandatory requirements that would be applicable would be a requirement that all vehicles, equipment and tools must be stored at all times complete within a building equipped with a floor drain system with a holding tank to contain spillage and that there be no storage of supplies which would include liquid petroleum products of any kind except within motorized vehicles or equipment.

25. The Exhibit marked "K-2" also shows a representation of the Grafton & Upton Railroad Tracks crossing South Main Street and Depot Street and Vernon Street to the locus. As that plan indicates on the locus the main line of the GU continues with one area of siding track. There are no indications anywhere on the locus that there have ever been any other buildings or structures in existence.

26. In the course of his investigation as to the applicability of the exemption from local controls Town Counsel Moody communicated with the Surface Transportation Board as to the status of the Grafton & Upton Railway Company and the Boston Railway Terminal Corporation. Attorney Moody was informed that the Grafton & Upton Railway Company is a legitimate common carrier railroad but that no record could be found of Boston Railway Terminal Corporation ever having applied for authorization to operate as a rail common carrier.

Signed under the pains and penalties of perjury this 8th day of January, 2004

_____
Larry L. Dunkin