UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

FILED
IN CLERK'S OFFICE

2004 NOV 18 P 2: 12

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| GRAFTON AND UPTON RAILROAD COMPANY,<br>Plaintiff<br><br>v.<br><br>TOWN OF MILFORD,<br>Defendant | C.A. No.: 03-40291-NMG |

## JOINT STATUS REPORT

The parties in the above-captioned, pursuant to the court's *Memorandum & Order* dated February 27, 2004, hereby provide to this Honorable Court a status report concerning the defendant's *Petition of the Town of Milford, Massachusetts for Declaratory Order* recently pending before the Surface Transportation Board ("STB"), Finance Docket No.: 34444.

Counsel for both parties have been notified by the Surface Transportation Board that it rendered its decision on August 11, 2004. The decision was the unanimous decision of the Surface Transportation Board. A copy of the decision of the Board is attached hereto as Exhibit "A".

The parties respectfully request that this Honorable Court remove the pending stay and schedule a status conference to establish a schedule for discovery and trial in the above matter.

Respectfully submitted:

| GRAFTON AND UPTON RAILROAD CO., | TOWN OF MILFORD, MA |
|---|---|
| By its attorneys, | by its attorney, |

<table>
<tr><td>Michael B. Flynn   BBO# 559023<br>Richard A. Davidson, Jr.  BBO# 552988<br>Flynn & Associates, P.C.<br>189 State Street, 6th Floor<br>Boston, MA 02109<br>(617) 722-8253</td><td>Gerald M. Moody   BBO# 352380<br>Town of Milford<br>Legal Department<br>   52 Main Street<br>Milford, MA 01757-2622<br>(508) 634-2302</td></tr>
</table>

Dated: September 1, 2004

34276  SERVICE DATE - AUGUST 12, 2004
EB

SURFACE TRANSPORTATION BOARD

DECISION

STB Finance Docket No. 34444

TOWN OF MILFORD, MA – PETITION FOR DECLARATORY ORDER

Decided: August 11, 2004

By a petition filed on December 9, 2003, the Town of Milford, MA (Milford) seeks the institution of a declaratory order proceeding to determine whether federal preemption under 49 U.S.C. 10501(b) would shield the planned activities of the Boston Railway Terminal Company (BRT) in a rail yard owned by the Grafton and Upton Railroad Company (GU) from state and local laws and regulations. On December 29, 2003, GU filed a reply. BRT did not file a reply. For the reasons discussed below, Milford's request for institution of a declaratory order proceeding will be denied because the application of the law to the facts described is clear.

BACKGROUND

GU, a rail carrier, owns a rail yard located in Milford (Milford yard) near an interchange with a line of another rail carrier, CSX Transportation, Inc. (CSXT). The Milford yard straddles GU's long-dormant 15.5-mile main line, which terminates at the CSXT line. BRT, which, despite its name, is not a rail carrier, must relocate a facility that it currently operates in the Boston area. BRT therefore proposes to build and operate a transloading and steel fabrication facility on unused property within the Milford yard, where it would receive shipments of steel from the CSXT line. In anticipation of the agreement, GU has reinstalled switches on its line at the point of interchange with the CSXT line.

Under the parties' plan, GU would transport rail cars carrying steel from its interchange with CSXT to the Milford yard and BRT's facility. BRT employees would then offload the steel and haul it by truck to customers throughout New England, sometimes first performing some fabrication work (e.g., cutting and welding) in a building to be constructed across at least one track at the Milford yard. After the steel shipments are unloaded, GU would move the empty rail cars back to the CSXT interchange point. BRT's use of GU's rail line and yard would be non-exclusive, as GU may use the rail line and yard for other transportation purposes.

Milford and GU have discussed the proposed arrangement, but disagree as to whether state and local laws and regulations would apply to the proposed BRT facility. Milford maintains that BRT's proposed transloading and steel fabrication operations at the Milford yard must

EXHIBIT "A"

STB Finance Docket No. 34444

comply with local zoning, state wetlands laws and other applicable laws. GU asserts that the preemption of 49 U.S.C. 10501(b) shields both its operations and those of BRT from state and local laws and regulations. After discussions failed, Milford filed this petition seeking a declaration by the Board that the activities of BRT on the property of GU would be subject to state and local laws and regulations. GU then filed a motion for declaratory and injunctive relief in Federal court.

In an order dated February 27, 2004, the Federal district court granted a preliminary injunction enjoining Milford from enforcing local zoning laws or otherwise attempting to prevent, delay or prohibit GU from developing the Milford yard project in conjunction with BRT. Grafton and Upton R.R. v. Milford, Civil Action No. 03-40291-NMG (D. Mass. Feb. 27, 2004). The court, however, stayed its order to permit the Board to consider the matter in full. Id. at 15.

## DISCUSSION AND CONCLUSIONS

The Board has discretionary authority under 5 U.S.C. 554(e) and 49 U.S.C. 721 to issue a declaratory order to eliminate a controversy or remove uncertainty. Here, however, there is no need for the Board to institute a proceeding, because it is clear that: (1) the Board does not have jurisdiction over steel fabrication activities; (2) the Board does not have jurisdiction over rail/truck transloading activities that are not performed by a rail carrier, or on behalf of a rail carrier, that holds itself out to offer those services to the public; and (3) the broad Federal preemption of section 10501(b) does not apply to activities over which the Board's jurisdiction does not extend.

The Federal preemption provision contained in 49 U.S.C. 10501(b), as broadened by the ICC Termination Act of 1995, Pub. L. No. 104-88, 109 Stat. 803, shields railroad operations that are subject to the Board's jurisdiction from application of state and local laws and regulations that would prevent or unreasonably interfere with railroad operations. See Joint Petition for Declaratory Order – Boston and Maine Corporation and Town of Ayer, MA, STB Finance Docket No. 33971 (STB served May 1, 2001) (Ayer). The Board has jurisdiction over "transportation by rail carrier." 49 U.S.C. 10501(a). To come within the Board's jurisdiction and the scope of Federal preemption, an activity must be both "transportation" and "by rail carrier" under section 10501.

Whether a particular activity constitutes transportation by rail carrier under section 10501 is a fact-specific determination. The term "transportation" is defined broadly to include a facility related to the movement of property by rail, and services related to that movement, including receipt, delivery, transfer and handling of property. 49 U.S.C. 10102(9)(A), (B). But even under the broadest construction of the term, BRT's proposed steel fabrication activities fall outside the definition of railroad transportation. See Growers Marketing Co. v. Pere Marquette Ry., 248 I.C.C. 215, 227 (1941).

2

STB Finance Docket No. 34444

In contrast, BRT's planned transloading activities would fall within the statutory definition of transportation. See Green Mountain Railroad Corporation – Petition for Declaratory Order, STB Finance Docket No. 34052 (STB served May 28, 2002) (cement transloading facility); Ayer (automobile unloading facility). But for transloading activities to qualify for preemption, they must be offered by a rail carrier (either directly or through its agent). Notwithstanding its name, on this record, BRT has not been shown to be a rail carrier. GU does not allege that BRT provides common carrier transportation, nor is there evidence on the record here to suggest that it does. In fact, many shippers that own and operate locomotives and transloading facilities are not considered to be rail carriers under the statute. BRT has not sought or obtained authority from the Board pursuant to 49 U.S.C. 10901 in connection with its planned operation in the Milford yard, and BRT's planned activities (rail/truck transloading, steel fabrication, and truck delivery) are not the type of activities that, standing alone, would be sufficient to qualify it as a "rail carrier."

GU contends that it will play an integral role in BRT's operations and that, as GU is a rail carrier, its involvement would somehow bring BRT's activities under the auspices of a rail carrier. GU argues that its involvement distinguishes BRT's proposed activities from those described in Board and court cases holding that third-party noncarriers operating transloading facilities on the property of a rail carrier do not fall within the Board's jurisdiction or within section 10501(b) preemption. See, e.g., Florida East Coast Ry. v. City of Palm Beach, 110 F. Supp.2d 1367 (S.D. Fla. 2000), aff'd, 266 F.3d 1324 (11th Cir. 2001) (third-party noncarrier rail/truck transloading activities not exempt from local zoning and occupational licensing ordinances).

Based on the record here, GU's involvement would be limited to transporting rail cars for BRT and leasing it some surplus property. GU would transport loaded rail cars to BRT's facility and return empty cars to the CSXT interchange point. BRT, on the other hand, would control the functions of unloading the rail cars, handling and (in some cases) fabricating the shipped steel, and then trucking it to customers. In doing this, nothing on the record establishes that BRT would be acting on behalf of GU or that GU would hold out BRT's transloading services as part of the common carrier services that GU offers to the public. Rather, BRT would be offering its own services to customers directly (as BRT does today at its Boston location that it is planning to vacate). It appears that GU's involvement would end when it delivers loaded rail cars to BRT's facility, and therefore BRT's activities would be no different from those of other rail customers or third-party intermediaries whose similar activities do not fall within the Board's jurisdiction. Thus, BRT's planned activities would not be considered integrally related to GU's rail carrier service. The fact that BRT's planned activities would be located on property leased from GU does not change this analysis.

In sum, GU itself is a rail carrier, and its activities of transporting rail cars to and from BRT's proposed facility would be protected under section 10501(b). In contrast, BRT's planned steel fabrication activities are not within the definition of "transportation," and its planned

STB Finance Docket No. 34444

rail/truck transloading activities, while within the definition of "transportation," would not be conducted by or for a rail carrier, as is required to fall within the Board's jurisdiction as defined in section 10501(a). Thus, the Board does not have jurisdiction over those planned activities, and section 10501(b) preemption would not prevent application of state and local regulations to BRT's proposed activities or facilities.

Accordingly, as the law is clear, there is no need to institute a proceeding and Milford's request for institution of a declaratory order proceeding will be denied.

This action will not significantly affect either the quality of the human environment or the conservation of energy resources.

<u>It is ordered</u>:

1. The Petitioner's request for a proceeding is denied.

2. This decision is effective on the date of service.

By the Board, Chairman Nober, Vice Chairman Mulvey, and Commissioner Buttrey.

Vernon A. Williams
Secretary

4