UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

GRAFTON AND UPTON RAILROAD
COMPANY,
              Plaintiff,

        v.

TOWN OF MILFORD,
              Defendant.

C.A. No.:  03-40291-NMG

## PLAINTIFF'S MOTION IN LIMINE REQUSTING THAT THIS HONORABLE COURT NOT GRANT DEFERENCE TO THE STB'S DECISION, DATED AUGUST 12, 2004

The Grafton and Upton Railroad Company ("GU") hereby moves *in limine* that this

Honorable Court not give deference to the *Decision* of the Surface Transportation Board

("STB") in Town of Milford, MA – Petition for Declaratory Order, Finance Docket No.:  3444,

dated August 12, 2004 ("Decision").  This case is not presently ripe for a motion for summary

judgment in that a number of factual issues remain in dispute between the parties.  This Court

must not give deference to the STB's *Decision* and it must permit the GU to proceed further with

its action and establish its damages.

As grounds therefore, the GU states that the defendant, Town of Milford ("Town"), is

preempted from preventing the GU's proposed activities at its Milford yard by the provisions of

the *Interstate Commerce Commission Termination Act*, 49 U.S.C. § 10501(b), the *Decision* is not

entitled to Chevron deference, and that the *Decision* lacks thoroughness in its consideration of

the facts and circumstances of this case and is fraught with invalid reasoning when applying the

facts and circumstances of this case to the statutory scheme.

## I.  FACTUAL BACKGROUND

The GU expressly incorporates herein by this reference, and makes a part of this *Memorandum*, the "Factual Background" section of its *Verified Complaint for Declaratory Judgment* ("Verified Complaint"), as well as the *Affidavit of Bridget Lucey,* which is attached to *Memorandum of Law in Support of the Plaintiff's Motion for a Preliminary Injunction* as Exhibit "1" ("Affidavit"). The GU further incorporates herein by this reference, and makes a part of this *Memorandum*, the *Memorandum & Order* of this Court, dated February 27, 2004, a copy of which is attached hereto as Exhibit "A" and the STB's *Decision* in Town of Milford, MA – Petition for Declaratory Order, Finance Docket No.: 3444, dated August 12, 2004, a copy of which is attached hereto as Exhibit "B."

## II.  DISCUSSION OF LAW

When this Court reviews an agency's construction of the statute which the agency administers it is confronted with the question of whether Congress has directly spoken to the precise question at issue. Chevron U.S.A. v. Natural Res. Def. Council, 467 U.S. 837, 842(1984). If the intent of Congress is clear, then that is the end of the matter for both the Court and the agency, and the Court must give effect to the unambiguously expressed intent of Congress. Id, p. 842-843. The intent of Congress is exceptionally clear in the statutory scheme set forth at 49 U.S.C. § 10501, as it desires to protect rail carriers from the exact claims being advanced by the Town in this case. The STB has too narrowly construed the meaning and intent of the statutory scheme by failing to properly consider the proposed activity for the yard and the relationship between the GU and BRT as each applies to 49 U.S.C. §§ 10501(B) and 10102(9)(A) and (B).

2

The Supreme Court has recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations has been consistently followed by the Court whenever decision as to the meaning or reach of a statute has involved reconciling conflicting policies, and a full understanding of the force of the statutory policy in the given situation has depended upon more than ordinary knowledge respecting the matters subjected to agency regulations. Chevron, at p. 844. The regulatory scheme in this case is neither technical nor complex and the STB was not reconciling conflicting policies, therefore Chevron deference is not appropriate and this Court is not required to grant deference to the *Decision*. Id, at 865.

**A.    The GU's Proposed Activities are Entitled to Preemption by the Provisions of the *Interstate Commerce Commission Termination Act*, 49 U.S.C. § 10501(B)**

**1.    This Court must not give deference to the STB's Decision due to the STB's lack of thoroughness in considering the facts and circumstances of this case, as well as the STB's invalid, narrow reasoning in the application of the facts and circumstances of this case to the statutory scheme.**

This Court must not give the *Decision* of the STB deference due to the fact that the STB failed to thoroughly consider the facts and circumstances of the relationship between the GU and BRT, and it failed to properly apply those facts and circumstances to the statutory scheme. That being said, the GU recognizes that the federal courts provide a fair measure of deference to an agency administering its own statute, but that such deference has varied with the courts looking to the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position. United States v. Mead Corporation, 533 U.S. 218, 228 (2001), citing Skidmore v. Swift & Co., 323 U.S. 134, 139-140 (1944). "The weight [accorded to an administrative] judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later

3

pronouncements, and all those factors which give it power to persuade, if lacking power to control." Skidmore, 323 U.S., at 140.

### i. The STB failed to properly interpret the statutory term "transportation."

The term "transportation" is defined by 49 U.S.C. § 10102(9)(A) and (B) to include a facility related to the movement of property by rail, and services related to the movement, including the receipt, delivery, transfer, and handling of that property. Exh. B, at p. 2. The property which was proposed to be "moved" in this case was steel. GU has repeated set forth that the BRT, under agreements with the GU, would transload the steel which would then be delivered to customers. Exh. A, at p. 5; and *Verified Complaint*, ¶¶ 38-46. The STB has focused its analysis on the fabrication portion of the proposed BRT activities which is but one part of the proposed activities. Exh. B. Even if the fabrication of the steel were a large part of the proposed activity such fabrication would be a service which is related to the movement of the steel during its receipt and handling before the steel is delivered to the customers, and, as such, that activity is entitled to federal preemption pursuant to 49 U.S.C. § 10501 together with 49 U.S.C. § 10102(9)(A) and (B). The STB failed to consider such analysis when it reached its conclusions. The failure of the STB to properly consider the proposed activities of the GU and BRT against the statutory scheme requires that this Court not give deference to the STB's *Decision*.

### ii. The BRT employees were to be agents of the GU during the transloading activities.

This Court has recognized and found that the GU is an entity with limited available financial resources. Exh. A, p. 2-4. Also, the court appropriately detailed the substance of the agreement reached by the GU and BRT which, in part, required the BRT employees to transload steel to trucks. Id, at p. 5. The GU, as part of that agreement, was to have obtained insurance

4

coverage to cover potential liability presented by the operations at the yard. *Affidavit*, at ¶ 47. It was obviously the GU's intent, as part of its agreement with BRT, that the BRT employees, while they were performing the transloading duties, would have become agents of the GU given the fact that the GU could not afford to employ workers to conduct the work and it was willing to accept the potential liability exposure and agreed to secure requisite insurance coverage for such activity.

The STB set forth that for transloading activities to qualify for preemption, the activities must be offered by a rail carrier either directly or through the rail carrier's agent. Exh. B, at p. 3. The STB completely failed in its *Decision* to recognize that the BRT employees would be acting as the GU's agents in the transloading of steel. Instead, the STB focused solely on the BRT as a separate entity stating that it was not a rail carrier. Id. The failure of the STB to properly consider the unique operating relationship between GU and BRT (which during the time period before the litigation commenced was continually evolving and becoming more complex[1]), in context of the statutory scheme requires that this court not give deference to the STB's *Decision*.

### iii.    The <u>Florida East Coast</u> is inapplicable to this case.

In support for its *Decision*, the STB cited <u>Florida East Coast Ry. v. City of Palm Bay</u>, 110 F.Supp.2d 1367 (S.D. Fla. 2000) as comparable authority to support its position that the proposed activities of the GU and BRT at the Milford yard were not entitled to federal preemption. The factual basis on which the <u>Florida East Coast</u> case was decided was completely different than that which existed in this case. In <u>Florida East Coast</u>, the arrangement between the railroad (FEC) and its tenant (Rinker) was essentially a land swap, and Rinker leased the railroad's premises in order to conduct its own aggregate distribution services. The services

---

[1] The continuing change in the relationship between the GU and BRT is evident through the ongoing changes of the proposals that were submitted to the Town, as well as through the pleadings ultimately submitted to this Court and the STB.

provided by Rinker had nothing to do with providing "railroad transportation." The Eleventh

Circuit held that "Rinker's use of the property…and the activities there performed by Rinker

serve no public function and provide no valuable services to FEC; rather, the arrangement

between FEC and Rinker merely facilitates Rinker's operation of a private distribution facility on

FEC-owned premises." Florida East Coast, 266 F. 3d at 1336. That decision hinged upon the

determination that the arrangement between Rinker and FEC served a "purely private function"

which was the "operation of a private distribution facility on FEC-owned premises." Id.

In direct contrast, the activities that the GU and BRT planned to conduct at the Milford

yard serve the important public function of facilitating the interstate shipment of steel, are

"integrally related" to the provision of interstate rail transportation and also provide valuable

services to the GU – specifically, the provision of income, the restoration and improvement of

the use of a vital rail yard, the ability to conduct interchanges with the CSX, and of re-opening a

profitable rail line. On these points alone, the facts of this case differ dramatically from the

crucial facts upon which the Florida East Coast case was decided. The Eleventh Circuit

recognized the uniqueness of the Florida East Coast case by noting that its holding would have

been different if Palm Bay's ordinance had been applied to the railroad or a third party which

actually conducted railroad operations. Id, at 1336-37 and n. 9.

The reliance of the STB on the holding in the Florida East Coast as supporting authority

invalidates the substance of its Decision in that the Florida East Coast case is clearly

distinguishable from the case at bar..

### iv.    The GU was not going to lease the Milford yard to the BRT

The STB repeatedly states throughout its Decision that the BRT was leasing a portion of

the Milford yard from the GU. Though it was the initial plan and/or discussion between the GU

and BRT that the BRT would lease a portion of the Milford yard, that provision was dropped as the parties proceeded to discuss a greater operational relationship between them. *Verified Complaint*, ¶¶ 37-48. The parties, at the time that the Town petitioned the STB and when the GU filed its action in this Court, had modified their original agreement and understanding such that they were ready to enter into a joint operating agreement which would not have contained a lease provision.

The STB failed to appreciate or accept the nature of the relationship between the GU and BRT; therefore its findings and *Decision* must not be given deference.

### v.    The transloading services were not private

The STB discusses and at other times implies, in its *Decision*, that the transloading services would not have been made available to the public. There is nothing in the record to which the STB can cite which supports the STB's assumption of fact. There was no agreement that only BRT steel be permitted to be transloaded at the Milford yard. Additionally, there was every reason to believe that as the amount of steel coming through the yard increased, then more profit that the GU was set to receive. Logically and financially, the GU had every incentive to increase the capacity of the Milford yard to its fullest. Obviously, with the BRT employees onsite and their anticipated relationship with the GU, the BRT would have enjoyed a different relationship with the GU than other rail customers, but that does not translate to the assumption made by the STB that such transloading services would not have been available to the public. Last, there was nothing in the operating agreement between the GU and BRT that suggested that BRT would have exclusive right to the use of the Milford yard.

The STB erroneously assumed facts which were not before it in the record; therefore its findings and *Decision* must not be given deference.

## III.    <u>CONCLUSION</u>

This Court must not give deference or weight to the STB's *Decision* in this particular

case due to the STB's incomplete and inexhaustive consideration of the relationship between the

GU and BRT, as well as the proposed joint GU/BRT activities at the site.  Further, the *Decision*

contains invalid reasoning which is unfounded in 49 U.S.C. §§ 10501 and 49 U.S.C. §

10102(9)(A) and (B).  Based on all of the foregoing factors the STB's *Decision* must not be

given deference or persuasive effect on this Court.

<div style="margin-left:50%">

Respectfully submitted,
GRAFTON AND UPTON RAILROAD CO.,
by its attorneys,

 /s/  Richard A. Davidson, Jr.
Michael B. Flynn          BBO No.: 559023
Richard A. Davidson, Jr.    BBO No.: 552988
FLYNN & ASSOCIATES, P.C.
400 Crown Colony Drive, Suite 200
Quincy, MA  02169
(617) 773-5500

</div>

Dated:  March 11, 2005